STATE OF WEST VIRGINIA *v.* GEORGE CRUMMIT *and* HAROLD GOODWIN

(No. 9123)

Submitted January 8, 1941. Decided February 4, 1941.

*Lloyd H. Young* and *John C. Southern,* for plaintiffs in error.

*Clarence W. Meadows,* Attorney General, and *Kenneth E. Hines,* Assistant Attorney General, for defendant in error.

KENNA, PRESIDENT:

This writ of error was granted to an order of the Circuit Court of Harrison County refusing a writ of error to a judgment of the Criminal Court of that county sentencing George Crummit and Harold Goodwin to confinement in the penitentiary for entering, without breaking, the store of G. C. Murphy Company on Main Street in Clarksburg and carrying away money of the value of $180.00 in August, 1938. Orval Nicholson, a co-indictee, having confessed, testified for the State at the trial of his two accomplices. The petition sets forth fifteen assigned grounds of error, all of which have been examined, but since only two were argued and briefed, this opinion will be confined to the errors submitted, both of which are confined to the personal privilege of a witness, one for the State and another for the defense, to refrain from answering questions that tend to degrade or incriminate the witness involved.

A resume of the State's testimony shows that on the afternoon of August 10, 1938, Crummit, Goodwin and Nicholson met and discussed a plan to enter the G. C. Murphy store that night, Nicholson being familiar therewith due to having delivered goods there. They agreed that Nicholson should enter the store late that afternoon, conceal himself, and after the store was closed should remove bags of money that the manager customarily hid behind pillows on the shelving upon one of the upper floors. Crummit and Goodwin were to go into an alley behind the store building, and Nicholson was to toss the sacks to them from a window fronting upon the alleyway. The scheme transpired as planned and around ten-thirty in the evening Nicholson left his hiding place and, first looking out of the window in order to ascertain that

Crummit and Goodwin were actually in the alley, found three sacks of money, tossed them from the window, and later that night met the other two at the rooming house where Crummit resided where they divided equally, in round figures, $180.00 in paper and silver money. We believe that it is unnecessary to go more into detail concerning the testimony, other than to say that both the accused categorically denied every material phase of Nicholson's testimony, stating that they were not present when the offense was committed.

Nicholson was placed upon the witness stand by the prosecuting attorney. The trial judge, on his own volition and before the witness was interrogated, instructed him that he need not respond "to any question that is put to you by any one that would embarrass you, or has any tendency to incriminate you. You are at liberty to answer if you want to, but you do not have to if you do not want to." There was no objection to the court's statement at the time, but upon cross-examination, the witness was asked by the attorney for the defense if he had told the prosecuting attorney about being in the penitentiary "down in Kentucky." Thereupon, the prosecuting attorney stated that he thought the witness was privileged not to answer, and the court informed the witness that he might answer or not, as he wished, the defendants saving their exception. Similar inquiries were made at several different times during the cross-examination of the witness with the same result, witness' privilege not to reply being claimed and sustained by the trial court.

While it is true that the trial judge in instructing the witness concerning his privilege not to reply to questions having a tendency to degrade or incriminate him, overstated the legal principle by telling the witness he need not reply to questions that would "embarrass" him, as a matter of fact the only questions the witness declined to answer involved his previous felony conviction in the State of Kentucky. Therefore, the only question before us is whether replying to a question of that nature would be degrading to the witness. Code, 57-3-5, does not apply since Nicholson was not a convict when questioned, and

the habitual criminal statute (Code, 61-11-18, as amended by Chapter 26, Acts 1939), since it creates no offense and relates to punishment only, lays no groundwork for self-incrimination. See *Graham* v. *West Virginia*, 224 U. S. 616, 32 S. Ct. 583, 56 Law. Ed. 917. Questions relating to a previous conviction and to a satisfied sentence we do not regard as incriminating. If they were, the requirement to answer would be governed by Code, 57-5-2, which confèrs discretionary power upon the trial judge to compel the witness to answer and protects the witness from prosecution for the offense to which his answer related in the event he is required by the court to respond to criminating questions. The legislative grant of discretion to the trial judge will be noted.

In a number of states the question of whether a witness on cross-examination may be interrogated concerning a previous satisfied penal judgment is governed by statute, and in the remaining states, although most of them permit the question to be propounded and require its answer under varying conditions, there is little uniformity that may be safely followed. The exact question has never arisen in this Court before, although in the case of *State* v. *Hill*, 52 W. Va. 296, 43 S. E. 160, Judge Brannon discusses the public policy involved with his usual breadth of attitude, clearly weighing the importance of letting the jury properly have full information concerning the veracity and character of the witness on the one hand, and on the other hand, of preventing the witness stand being used as a ducking stool with the accompanying abhorence of those required to occupy it. In the case of *State* v. *Price*, 113 W. Va. 326, 167 S. E. 862, Judge Maxwell discusses the same question under analogous circumstances, quoting the opinion in the *Hill* case at some length. In the case of *State* v. *DeBoard*, 119 W. Va. 396, 194 S. E. 349, syllabus three in the *Price* case is used as syllabus eight, the substance of both being that, subject to the witness' right to decline to answer, it lies within the sound discretion of the trial judge to exclude or permit on cross-examination questions having a degrading tendency. Since a former conviction, we think, is to be regarded as matter that

may or may not have a degrading tendency, dependent upon a variety of circumstances, including the nature of the previous offense, and may relate to the question of veracity with different shades of meaning, we are of the opinion that it would be unwise to attempt to establish an inflexible standard, and that it would serve the ends of justice to a greater extent to rest the determination in the sound discretion of the trial judge. Perceiving no indication of an abuse of that discretion relating to the cross-examination of the witness Nicholson in the record before us, the trial judge's rulings in this regard are affirmed.

Frank Cross was produced as a witness on behalf of the defendants, and left the witness stand without being asked whether he had been convicted of embezzlement. The prosecuting attorney propounded questions to one of the defendants' witnesses and to one witness for the State, the questions stating as a matter of fact the conviction of Cross, and asking the witnesses whether they knew anything about it. Upon the objection of the defendants' attorney, the questions were excluded, the court not being asked to admonish the prosecuting attorney in either instance. It is urged now that both questions contained a statement of fact that would likely improperly influence the jury, and that the impropriety of the question having been ruled upon and sustained by the trial judge, the persistent manner in which it was kept before the jury by the prosecuting attorney was in its very nature prejudicial. Here, again, we think we are confronted by the question of whether or not the judicial discretion vested in the trial judge has been abused. An improper question twice propounded might, under a set of very unusual circumstances, require the discharge of a jury. Under different circumstances, an improper question could be repeated many times without bringing about that result. We think no abuse of discretion is shown.

Of course, questions which, if answered in either the affirmative or in the negative, must involve an admission of a statement of fact embraced within the question's phraseology, should not be permitted. But here

the witness not having been permitted to answer, we do not perceive how the mere statement of the question could constitute reversible error.

For the foregoing reasons, the judgments of the Circuit Court of Harrison County and of the Criminal Court of that county are affirmed.

*Affirmed.*