Jackie **DAVIS** and Nita Davis, Appellants,

v.

The **STATE** of Oklahoma, Appellee.

No. F–76–820.

Court of Criminal Appeals of Oklahoma.

March 2, 1977.

Rehearing Denied March 16, 1977.

Steven V. Swanson, Oklahoma City, for appellants.

Larry Derryberry, Atty. Gen., Douglas L. Combs, Asst. Atty. Gen., for appellee.

## OPINION

BLISS, Judge.

The Appellants, Jackie Davis and Nita Davis, hereinafter referred to as defendants, were charged, jointly tried before a jury and convicted in the District Court of Washita County, Case No. CRF–76–3 of the crime of Unlawful Possession of Barbiturates with Intent to Distribute. Punishment was assessed at a term of two (2) years in the custody and control of the Department of Corrections of the State of Oklahoma and a fine of $500.00 for each defendant. From judgments and sentences in accordance with the verdict the defendants have perfected their timely appeal.

Briefly stated the evidence adduced at trial is as follows: Washita County Deputy Sheriff James Cookerly testified that at approximately 6:15 p. m. on January 11, 1976, he and numerous other officers converged upon the rural home of the defendants in Washita County to execute a search warrant. Upon arrival the witness with Officer Mazurek went to the back porch and knocked on the door with his pistol and announced he was a deputy sheriff with a search warrant. The defendants could be seen inside the house and when they did not respond the officers began to kick the door. The defendants then opened the door and were told to lie on the floor for their own protection. No pills were found on the defendants or in their near vicinity and Cookerly stated he saw no handcuffs on the

defendants until after pills were found down in the cellar inside a chimney. The pills were in a brown leather case which contained no identification. Cookerly further stated that when he approached to execute the warrant he did not know what was going to happen inside the house nor did he know who was in it. He and Sheriff Cooper were the only ones carrying handguns, all other officers being armed with rifles or shotguns. Cookerly had been to the home on at least one prior occasion to see if there were any known drug users visiting the location and the results were negative. At approximately 3:45 a. m. on the morning before the raid he took a confidential informant, who he knew was facing criminal charges for distribution of drugs, to the defendants' home to purchase drugs. Prior to the informant going into the house the officer made a body search of informant and thoroughly searched the informant's car. The informant was under continuous surveillance except while in the home. When the informant came back approximately 5 to 7 minutes later he had a plastic baggie containing 10 pills which, upon a field test, were found to contain barbituric acid. Cookerly did not know how many times the informant had been in the Davis home and did not know whether he kept a supply of drugs there. He also had no way of knowing the informant's reliability from past experience and stated that the informant was not altogether a respectable citizen. Cookerly further related that his investigation of the defendants commenced some two or three weeks prior to the execution of the search warrant and that he had heard that a juvenile female had stayed at the defendants' home for a few nights. He was also aware that the juvenile female came to the District Attorney's office and stated that the drugs taken in the raid belonged to her.

Washita County Deputy Sheriff Ron Mazurek, then testified that on the date in question he went to the defendant's home to execute a search warrant with Officer Cookerly. As Mazurek pulled up Cookerly jumped out of the vehicle and ran up to the

back porch. When Mazurek reached the porch he heard Cookerly yelling "Sheriff's Office, search warrant". Mazurek then proceeded onto the porch and also announced his authority and purpose. When he approached the porch he could see Jackie Davis standing in the kitchen and making no move towards the door. The officers then began to kick the door and Mr. Davis opened it. Entering the kitchen both defendants were ordered to lie on the floor. Cookerly went on through the house and Mazurek remained with the defendants, watching the hallway and bedrooms. The officer testified that it was normal procedure when serving a search warrant to try to get in the house as quickly as possible to keep persons from disposing of narcotics. Guns were usually drawn for psychological effect since it doesn't give the person time to think about what he wants to do, including drawing a gun and using it. After the defendants were secured all rooms were quickly gone through and no other persons were found in the house. The house was then searched and pills were found in a brown overnight shaving kit in a hollow brick column in the basement. A bank bag containing a roll of money was found in the overnight kit along with the pills. The evidence was subsequently sealed and transported to a laboratory for examination. The officer further testified that he did not know anybody held a gun on the defendants after they found out the defendants were not dangerous. He further stated that there were approximately 900 pills in the kit.

Washita County Sheriff Harold Cooper then testified that he went to the defendants' home to aid in the execution of the warrant. Upon arrival he went to the front door of the home, knocked and announced that he was the County Sheriff. He waited 30 to 45 seconds and then forced the door since there was no response. When he gained entrance he found the two defendants lying on the floor. They were then given their Miranda rights and placed under arrest for "probable cause of dispensing drugs." He then stated that Officer Mazurek searched the basement and found the kit. On cross-examination Cooper testified that a juvenile female had told him and the Assistant District Attorney that the drugs found were hers. He further stated that he knew the informant had numerous drug charges pending against him and that informants were often procured from arrests that they were involved in. He further stated that all officers who took part in the raid were in plain clothes but were wearing jackets marked "Washita County Sheriff's Department."

Although the transcript as presented on appeal does not reflect the testimony of State Chemist Albert Gray, it does reflect that the testimony of Officer Cookerly was interrupted so that Albert Gray could testify and that he was examined, cross-examined and excused. The defendant's brief recites that the chemist testified that the pills found in the basement were Schedule III substances containing barbituric acid derivatives.

Gary Banks then testified that he was the owner of the property in question and that he had rented the house to the defendants in October and they were still living in the house. The state then rested.

The only witness who testified for the defense was Assistant District Attorney Ralph Emerson who testified that subsequent to the arrest a sixteen year old girl came to his office with her mother and stated that the drugs found in the house were hers. Emerson at that point advised the girl of her constitutional rights and her mother stated that she no longer wished to make a statement. The defense then rested.

The defendants' first assignment of error urges that the trial court erred in overruling the defendants' motion to suppress after the evidence presented showed that the affidavit for search warrant contained material misrepresentations made with intent to deceive and that said erroneous statements were material to probable cause.

The affidavit which served as the basis for the search warrant reads as follows:

James Cookerly, of lawful age, being first duly sworn upon his oath, desposes and states:

1. That affiant is a Deputy-Sheriff of Washita County, Oklahoma, and has been employed as Deputy-Sheriff of Washita County for a period of 4 months and previously 2½ years with Clinton Police Department and is very familiar with drug terminology and drug traffic.

2. That on or about the 10th day of December 1975, an informant reported to the Washita County Sheriff's Office that he knew where drugs were being kept and dispensed and that he described the house located at Range 19W, Township 9N, Section 33 on the Northwest quarter southside of the road, the only livable house in that quarter section, but at this time no action was taken and informant was told to report back to the Sheriff when he knew for certain that drugs had been recently dispensed and were being kept at the above location.

3. That on January 11, 1976 in the early morning hours the same informant came to affiant at the Washita County Jail and informed that barbituates were being kept and dispensed from the above location by the same person who had been at the house at the previous time and further described as a White male 5′6″ to 5′7″ medium build with lt brown hair shoulder length and slightly frizzy with a mustache and 24 to 25 years of age.

4. That at this time affiant contacted Sheriff Cooper and was told to proceed with a Search-Surveillance purchase by informant with affiant as surveillance officer.

5. That affiant proceeded to location here-to-fore described, searched informant found no drugs of any kind, and told informant to proceed into the house. Informant under constant surveillance by affiant went into the South kitchen door of the house and was in the house for 10 minutes and returned directly to affiant with a quantity of 10 capsules which was then placed in possession of affiant and that affiant and informant proceeded away from the house and affiant per-formed a field test on said capsule and they showed positive for barbituates.

6. Informant told affiant that there was left in the house approx. one-thousand (1,000) similar capsules in the Northwest room in a chest of drawers and further that in the West middle room he observed 4 to 5 pounds of what appeared to be Marijuana in a black suitcase.

7. That affiant believes this informant to be reliable because the information given in December proved to be accurate and because of constant surveillance and search of informant and further because informant is currantly and has been for several months a wage earning worker fully employed.

8. That at this time the afternoon of January 11, 1976 affiant believes from the fore going that the above described controlled dangerous drugs are being kept in the described house and curtilage.

Wherefore affiant ask that a search warrant issue according to law for the house and curtilage being Range 19w, Township 9N, Section 33 Northwest quarter Southside of road, directed to any Sheriff, Policeman or Law Enforcement Officer in Washita County, Oklahoma, commanding that he search the said premises and take possession of the property herein before described and detain the same as provided by law.

The record reveals that a full hearing on the defendants' motion to suppress was held by the trial court and, after it became apparent that the affiant did not know whether the informant had been or was currently employed, the trial court struck Paragraph 7 of the affidavit and held that the affidavit was still sufficient to show probable cause.

■ In *Wright v. State,* Okl.Cr., 552 P.2d 1157 this Court held that if erroneous statements are deleted from an affidavit for search warrant and the remaining portions of the affidavit establish probable cause then the affidavit is sufficient to support a search warrant. See also *Henderson v. State,* Okl.Cr., 490 P.2d 786.

The defendants further argue that the affiant intentionally deceived the magistrate by failing to advise the magistrate that the confidential informant was presently charged with a drug related offense in Washita County and was not a respectable citizen. However, the affiant during the hearing on the motion to suppress testified that he did not intentionally deceive the magistrate and thought that just because a person was charged with a crime it did not prove his guilt.

In *United States v. Thomas,* 489 F.2d 664 (5th Cir. 1973), cited in our recent case of *Brown v. State,* Okl.Cr., No. F–76–344 (1976), the rule was laid down that when an affidavit is shown to contain misrepresentations it is invalid if (1) the misrepresentations were done with the intent to deceive the examining magistrate, or (2) made without such intent but the erroneous statement is material to the establishment of probable cause. In the instant case Officer Cookerly testified that he did not intend to deceive the magistrate and the trial court was justified in believing the officer. It is our opinion that the unintentional misrepresentations would not have been material to the establishment of probable cause in the instant case. The confidential informant after being thoroughly searched and while under surveillance by the affiant entered the defendants' home and came out shortly thereafter with 10 capsules which field tested to be barbiturates. The fact that the drugs were obtained in the defendants' home by the informant while under surveillance lends credibility to his prior statement that the defendants were dispensing drugs from the house and his contemporaneous statement to the affiant that approximately 1,000 pills remained in the home. The affidavit was therefore adequate to support the issuance of the search warrant and the defendants' first assignment is without merit. It should, however, be noted that if the informant had not obtained the drugs from the home while under surveillance the affidavit would have been wholly insufficient.

The defendants' second proposition of error contends that the trial court erred in failing to declare a mistrial when two police witnesses interjected evidence of other crimes.

The first comment complained of was made by Officer Cookerly during direct examination by the state and arose as follows:

"Q Are you aware if any contraband was discovered during that search?

A Yes, sir.

Q Were you in the room when it was discovered?

A I recovered just personally, a small, minute amount of marihuana. I wasn't_____.

BY MR. SWANSON: May we approach the bench?

BY MR. SWANSON: Let the record reflect that each of the defendants moves for a mistrial on the basis of the statement by the witness which introduces another crime distinct and of a separate nature than the crime charged here.

BY THE COURT: Overruled; let the officer identify what he can.

The other statement complained of was made by Sheriff Cooper during cross-examination by the defense and arose as follows:

"Q Is there any part of this evidence that could have been fingerprinted to find out who had touched it?

A Oh, based on experience I'd say the bags of marihuana could have been.

Q How about this bottle here?

BY MR. SWANSON: And may the record show that we object to the last response and move for a mistrial.

BY THE COURT: Overruled.

A Yes, sir, it could have been.

It is apparent from both comments that each officer mentioned marihuana which was found in the defendants' home during the search and was a part of the res gestae. See *Littke v. State,* Okl.Cr., 300 P.2d 684, and *Sherrill v. State,* 97 Okl.Cr. 154, 260 P.2d 418. An analogous situation arises in *Payne v. State,* Okl.Cr., 520 P.2d 694, wherein this Court held that seven cases of liquor seized as a result of a search warrant were admissible in a prosecution

for sale of alcoholic beverages without a license even though they tended to prove the commission of a crime for which the accused was not charged since the seizure of the seven cases of liquor was a part of the res gestae. See also *Miller v. State,* Okl.Cr., 522 P.2d 642. The defendants' second assignment is without merit.

The defendants' third assignment of error urges that the trial court erred in overruling the defendants' motion to suppress where the evidence proved that the officers executed the search warrant in an excessive manner using unreasonable force and violence upon the property and person of the defendants. In support of their argument the defendants rely on 22 O.S. § 1228 which reads in pertinent part as follows, to-wit:

"Officers may break open an outer or inner door . . ., to execute the warrant, if, after notice of his authority and purpose he [is] refused admittance."

The defendants further rely on *Sears v. State,* Okl.Cr., 528 P.2d 732, wherein this Court held that there was an improper execution of a search warrant when police officers pushed open an unlatched door and entered without first announcing their identity and purpose and being denied admittance.

 The evidence presented by the state during the hearing on the motion to suppress indicates that Officers Cookerly and Mazurek announced their authority and purpose at the back door and were actually admitted by Jackie Davis. Sheriff Cooper and other officers were knocking at the front door and after announcing their authority and purpose were, as far as they knew, refused admittance since no one came to the door. Since the evidence presented by the defendants conflicted to some extent with the testimony of the officers, an issue of fact as to the exact method used in executing the search warrant was presented to the trial court. As this Court stated in *Mahan v. State,* Okl.Cr., 508 P.2d 703, as to the motions to suppress the evidence this Court will not reverse a trial court upon finding the fact in connection with the motion to suppress the evidence where there is competent evidence in the record reasonably tending to support the findings of the trial court.

 The fact that Officers Cookerly and Mazurek made the defendants lie on the floor until it could be determined if they were armed and anyone else was in the home does not invalidate the execution of the search warrant. The action of the officers was for the purpose of protecting themselves and the defendants. For all the reasons set out above the defendants' third assignment is without merit.

The defendants final assignment of error urges that the trial court erred in failing to require the state to disclose the identity of the confidential informant and to require the state to produce the informant at trial.

 It is apparent from the record that defense counsel and each defendant knew the identity of the confidential informant. Therefore the defendants suffered no prejudice whatsoever in the failure of the trial court to require the state to disclose the informant's identity.

 The record indicates that a subpoena was issued and the known informant was not found in the Washita County. However, there is nothing in the record to indicate that an application for continuance supported by a proper affidavit was timely filed by the defendants. The failure of the defendants to seek a continuance is fatal in the instant case and the defendants' final assignment is without merit.

From an examination of the record presented it is our opinion that the defendants received a fair and impartial trial before a jury, that no fundamental right of the defendants was prejudiced and that the judgments and sentences should be, and the same are hereby *AFFIRMED.*

BUSSEY, P. J., concurs.

BRETT, J., dissents.