STATE OF WEST VIRGINIA

*v.*

LESLIE D. HAVERTY

(No. 13881)

Decided June 24, 1980.

*Lewis, Ciccarello, Masinter & Friedberg and Arthur T. Ciccarello,* for P.E.

*Chauncey H. Browning,* Attorney General, *Lawrence R. Frail,* Assistant Attorney General, for D.E.

MILLER, JUSTICE:

The defendant, Leslie D. Haverty, seeks to have his conviction for the sale and delivery of marijuana set aside on three grounds. First, he asserts that the State was required to disclose the name of an informant who allegedly assisted its undercover agent, and that the State failed to do so. He also claims the trial court committed error in refusing to grant immunity to a defense witness who had invoked his Fifth Amendment privilege against self-incrimination. His third claim of error is that the prosecutor impermissibly questioned a defense witness regarding the defendant's prior acts of smoking marijuana.

I

To claim that the State failed to disclose the name of an informant is perhaps not an accurate characterization of this issue. The problem originated when the defendant asked in its motion for a bill of particulars for "[t]he identity of any person who accompanied the officer at the time of the alleged offense." The State's response was that "[n]o person accompanied the officer." A second inquiry was directed at "[t]he name and address of any undercover agent used for the purpose of either introducing the officer to the defendant or used in any aid to purchase the alleged controlled substance." The State's response was that there was no such person.

At trial, the State introduced the testimony of its undercover investigating officer, Donald Sizemore, a member of the Department of Public Safety. He had operated as an undercover agent in Roane County for approximately two weeks preceding the incident involving the defendant. On cross-examination, Officer Sizemore testified that he had initially been assisted by a Marian Snider in establishing contacts in the area, but that on the night in question she had not been involved in the transaction with the defendant.

It was Officer Sizemore's testimony that on the evening in question, he met the defendant in a tavern and asked him if he had any "pot" for sale. The defendant replied that he did. The two then went outside the tavern to talk, and at this point the defendant stated that he was suspicious of the transaction, indicating that Sizemore might be a "narc" and that he was going to "check him out." The defendant then left. He returned a short time later, agreed to make the sale and took Sizemore to an automobile in the parking lot.

Officer Sizemore further testified that he got into the back seat of the car and that Haverty got in its front seat. There were three other persons in the car, two in the back and one in the front. The defendant asked the other person in the front of the car, a man called "Chubby," where the marijuana was, and Chubby replied that it was under the dashboard. The defendant then took a plastic bag from under the dashboard, measured some of the substance from it into a wrapper from a cigarette pack, and gave the wrapper to Sizemore. Sizemore then paid him $5.00. The cigarette wrapper and its contents were introduced into evidence, and the substance was identified by a State chemist as marijuana.

The defendant's witness Jarvis was one of the persons in the car during the alleged transaction, and he and the defendant related a different version of the incident. Both denied any sale or delivery of marijuana to Sizemore. Their testimony was that during the evening in question, Marian Snider, whom they both knew from

high school, approached them outside the tavern, asking if they had any marijuana that she could smoke. They indicated to Ms. Snider that they had some marijuana in an automobile. She told them that she had a friend who also wanted to smoke marijuana, and then brought Sizemore to the car. Haverty and Jarvis testified that the defendant rolled a cigarette from marijuana contained in a plastic bag taken from under the dashboard of the car, and that everyone present took turns smoking it. After they finished smoking, Ms. Snider and Sizemore left the car.

The above summarized testimony shows a substantial variance in the evidence as to the presence of Marian Snider during the incident in question. Sizemore denied that she had any involvement in the transaction, while the defendant and his witness placed her at the scene.

We decline to cut the Gordian knot of this conflicting testimony as to whether the informant was actually at the scene.[1] Nor do we find it necessary to determine who falls within the category of an informant. Even were we to assume the furthest reach of the defendant's claim, that the witness Snider was an informant and that she was present during the transaction, the claim would not suffice under the law.

It is generally recognized that a common law privilege is accorded the government against the disclosure of the identity of an informant who has furnished information concerning violations of law to officers charged with the enforcement of the law. *Roviaro v. United States*, 353 U.S. 53, 1 L. Ed. 2d 639, 77 S.Ct. 623 (1957); Annot., 76 A.L.R.2d 262 (1961); McCormick, *Evidence* (2d ed. 1972) at 236.[2] We recognized this general rule in *State ex rel.*

---

[1] Were this particular factual issue crucial to the disposition of this point, we would resolve the factual issue in favor of the State, in view of the jury verdict in its favor. Syllabus Point 1, *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978).

[2] For a fuller treatment of the origin and scope of the privilege, see Note, *An Informer's Tale: Its Use in Judicial and Administrative Proceedings*, 63 Yale L.J. 206 (1953).

*Lykens v. Bouchelle,* 122 W.Va. 498, 11 S.E.2d 119 (1940), and *State v. Paun,* 109 W.Va. 606, 155 S.E. 656 (1930). In the second syllabus of *Paun,* we stated:

> "The proper administration of the law ordinarily forbids requiring an officer to disclose his source of information regarding a crime."

*Roviaro* recognized the rationale behind the rule as this:

> "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." [353 U.S. at 59, 1 L. Ed. 2d at 644, 77 S.Ct. at 627].

Other courts have acknowledged that included within the ambit of the privilege is the professional undercover informant who is a source of police intelligence on criminal activities in the community. *E.g., United States v. Prueitt,* 540 F.2d 995, 1004 (9th Cir. 1976); *United States v. Fischer,* 531 F.2d 783 (5th Cir. 1976); *United States v. Tucker,* 380 F.2d 206 (2d Cir. 1967); *People v. Lewis,* 57 Ill.2d 232, 311 N.E.2d 685 (1974); *Commonwealth v. Johnson,* 365 Mass. 681, 313 N.E.2d 571 (1974); *cf. McCray v. Illinois,* 386 U.S. 300, 18 L. Ed. 2d 62, 87 S.Ct. 1056 (1967).

The privilege, however, is not absolute, since disclosure may be required where the defendant's case could be jeopardized by nondisclosure. *Roviaro* provided the following balancing test:

> "We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible sig-

nificance of the informer's testimony, and other relevant factors." [353 U.S. at 62, 1 L. Ed. 2d at 646, 77 S.Ct. at 628-29].

In *Lykens, supra,* we made much the same point:

"[S]uch immunity from disclosure is not 'absolute', as was held in Worthington v. Scribner, 109 Mass. 487, 12 Am.Rep. 736, and other earlier decisions. Whenever it should appear to the court that the statements would tend to show the innocence of an accused person, or lessen risk of false testimony, or otherwise be essential to the proper determination of a case, then a paramount public policy would require that the statements be so used.***" [122 W.Va. at 500, 11 S.E.2d at 119-20].[3]

Even where the government has an obligation to identify its undercover informant or agent, its failure to do so will not ordinarily be error if the defense was already aware of the informant's identity. In *State v. Villalon,* 305 Minn. 547, 234 N.W.2d 189 (1975), the court, after citing a number of federal cases, stated:

"This has been the universal rule in the Federal courts. Defendant cannot claim prejudice by reason of the court's allowing the prosecution to withhold an informer's identity as privileged where defendant already knew his name...." [305 Minn. at 550, 234 N.W.2d at 191].

*See also United States v. Powers,* 572 F.2d 146 (8th Cir. 1978); *United States v. Weinberg,* 478 F.2d 1351 (3d Cir.

---

[3] As to the extent of the privilege, there is some confusion as to whether, in addition to identity, it extends to the contents of statements made by the informant. *Roviaro v. United States,* 353 U.S. 53, 1 L. Ed. 2d 639, 77 S.Ct. 623 (1957), suggests that the content of such statements may not be privileged. *State ex rel. Lykens v. Bouchelle,* 122 W. Va. 498, 11 S.E.2d 119 (1940), dealt with a civil case, and the issue of whether the privilege extended to informant statements was not formally raised. In a criminal case where the statement is exculpatory to the defendant, disclosure is required by *Brady v. Maryland,* 373 U.S. 83, 10 L. Ed. 2d 215, 83 S.Ct. 1194 (1963). *See also Wilhelm v. Whyte,* 161 W.Va. 67, 239 S.E.2d 735 (1977); *State v. Cowan,* 156 W. Va. 827, 197 S.E.2d 641 (1973); *State v. McArdle,* 156 W.Va. 409, 194 S.E.2d 174 (1973).

1973); *Kenny v. State,* 51 Ala. App. 35, 282 So.2d 387 (1973), *cert. denied,* 291 Ala. 786, 282 So.2d 392; *Rabreau v. State,* 269 So.2d 64 (Fla. App. 1972); *Roberts v. State,* 140 Ga. App. 21, 230 S.E.2d 84 (1976); *People v. Jarrett,* 57 Ill. App. 2d 169, 206 N.E.2d 835 (1965); *Davis v. State,* 560 P.2d 1051 (Okla. Crim. App. 1977); *State v. Lehman,* 8 Wash. App. 408, 506 P.2d 1316 (1973).

This principle turns aside the defendant's claim of error, since the record demonstrates that he was aware of the alleged informant's identity. We, therefore, need not decide whether Ms. Snider was present during the transaction, which would be a necessary fact to establish in order to require disclosure by the State. The defendant's prior knowledge of her identity avoids any hypothetical duty upon the State to make disclosure.

## II

Further error is claimed on the basis that the defendant's Sixth Amendment right to obtain witnesses on his behalf was violated when his witness, Mike Hyer, was subpoenaed to testify. Hyer invoked the Fifth Amendment and the court refused to grant defendant's request that Hyer be given immunity under W. Va. Code, 57-5-2. It is the defendant's position that the witness Hyer, who owned the car in which the alleged transaction took place and was present during the incident, was a critical defense witness.

The defendant cites *Virgin Islands v. Smith,* 615 F.2d 964 (3d Cir. 1980), as the latest case in an emerging area of the law which seeks a resolution between an individual's right to claim the Fifth Amendment privilege against self-incrimination and the defendant's Sixth Amendment right to compel the individual to be a witness in his behalf. The court in *Virgin Islands* concluded that under special circumstances, a trial court may be compelled to grant a defense witness immunity in order to make crucial exculpatory testimony available to the defendant. The court relied on its earlier case of *United States v. Herman,* 589 F.2d 1191 (3d Cir. 1978), *cert. denied,* 441 U.S. 913, 99 S.Ct. 2014, 60 L. Ed. 2d 386 (1979),

as well as *Chambers v. Mississippi,* 410 U.S. 284, 35 L. Ed. 2d 297, 93 S.Ct. 1038 (1973).

The origin of this rule may be traced to *Washington v. Texas,* 388 U.S. 14, 18 L. Ed. 2d 1019, 87 S.Ct. 1920 (1967), where the court invalidated a Texas statute which prohibited a participant in a crime from testifying on behalf of his coparticipant. The Court decided that the Sixth Amendment right to compulsory process for a criminal defendant included not only the right to subpoena the witness, but also to have him testify.[4]

Subsequently, in *Chambers v. Mississippi, supra,* the Supreme Court determined that a Mississippi evidentiary rule which precluded the defendant from cross-examining a witness that he had called to testify was contrary to due process principles. In *Chambers,* the defendant had called a witness who, by written confession, had admitted committing the crime charged to the defendant. At trial, the witness repudiated his confession and the defendant sought to cross-examine him, but was denied this right by the trial court.

Both *Washington* and *Chambers, supra,* involved matters unrelated to a defendant's demand that his witness asserting the Fifth Amendment be given immunity in order to compel his testimony. The United States Supreme Court has not addressed this problem, and most of the circuit courts which have considered it are reluctant, for a variety of reasons, to force immunity. One reason is that the federal immunity statute, 18 U.S.C. § 6002-6003, places the right to seek immunity in the Executive Branch of the Government and consequently the courts are reluctant to compel granting it. *Earl v. United States,* 361 F.2d 531 (D.C. Cir. 1966), *cert. denied,* 388 U.S. 921, 18 L. Ed. 2d 1370, 87 S.Ct. 2121 (1967); *United States v. Beasley,* 550 F.2d 261, 268 (5th Cir. 1977), *cert. denied,* 434 U.S. 938, 54 L. Ed. 2d 297, 98 S.Ct. 427; *United States v. Bautista,* 509 F.2d 675 (9th Cir. 1975);

---

[4] For a further discussion of the scope of compulsory process, see Westen, *Confrontation and Compulsory Process: A Unified Theory of Evidence for Criminal Cases,* 91 Harv. L. Rev. 567, 586 (1978).

*United States v. Berrigan,* 482 F.2d 171, 190 (3d Cir. 1973); *United States v. Smith,* 436 F.2d 787, 790 (5th Cir. 1971), *cert. denied,* 402 U.S. 976, 29 L. Ed. 2d 142, 91 S.Ct. 1680; *People v. Sapia,* 41 N.Y.2d 160, 391 N.Y.S.2d 93, 359 N.E.2d 688 (1976), *cert. denied,* 434 U.S. 823, 54 L. Ed. 2d 80, 98 S.Ct. 68 (1977).

Another more practical reason is that if a criminal defendant is able to force immunity for his witness, he then could create an immunity for his coparticipants. *In re Kilgo,* 484 F.2d 1215 (4th Cir. 1973). Judicially compelled immunity also encroaches upon the prosecutor's discretion in deciding which suspected offenders should be tried. *See Earl v. United States, supra; United States v. Beasley, supra.*[5]

Some of these considerations may not be applicable to our immunity statute, W. Va. Code, 57-5-2, which places the discretion to grant immunity in "the court in which he is examined [if it] is of opinion that the ends of justice may be promoted by compelling such testimony or evidence."[6] In *State v. Crummit,* 123 W.Va. 36, 13 S.E.2d 757 (1941), we said:

---

[5] A treatment of various aspects of this subject is found in Note, *The Sixth Amendment Right to Have Use Immunity Granted to Defense Witnesses,* 91 Harv. L. Rev. 1266 (1978).

[6] The full text of W. Va. Code, 57-5-2, is:

"In any criminal proceeding no person shall be excused from testifying or from producing documentary or other evidence upon the ground that such testimony or evidence may criminate or tend to criminate him, if the court in which he is examined is of the opinion that the ends of justice may be promoted by compelling such testimony or evidence. And if, but for this section, the person would have been excused from so testifying or from producing such evidence, then if the person is so compelled to testify or produce other evidence and if such testimony or evidence is self-criminating, such self-criminating testimony or evidence shall not be used or receivable in evidence against him in any proceeding against him thereafter taking place other than a prosecution for perjury in the giving of such evidence, and the person so compelled to testify or furnish evidence shall not be prosecuted for the offense in regard to which he is so compelled to testify or furnish evidence, and he shall have complete legal immunity in regard thereto."

"Questions relating to a previous conviction and to a satisfied sentence we do not regard as incriminating. If they were, the requirement to answer would be governed by Code, 57-5-2, which confers discretionary power upon the trial judge to compel the witness to answer and protects the witness from prosecution for the offense to which his answer related in the event he is required by the court to respond to criminating questions. . . ." [123 W.Va. at 39, 13 S.E.2d at 758].

It is not necessary for the disposition of this issue to make a major analysis of our immunity statute in comparison with the federal statute and case law. It is sufficient to state that even under the limited exception given in *Virgin Islands, supra,* in order for a defendant to obtain immunity for his witness, application has to be made to the court fulfilling the following conditions:

"[N]aming the proposed witness and specifying the particulars of the witness' testimony. In addition, the witness must be available and the defendant must make a convincing showing sufficient to satisfy the court that the testimony which will be forthcoming is both clearly exculpatory and essential to the defendant's case. Immunity will be denied if the proferred testimony is found to be ambiguous, not clearly exculpatory, cumulative or if it is found to relate only to the credibility of the government's witnesses. . . ." [615 F.2d at 972].

In the present case, the defendant does not meet these criteria, since there was no showing that the testimony of Hyer would have done anything than corroborate the testimony of the witness Jarvis regarding the transaction. Consequently, the trial court was correct in rejecting the requested immunity.

### III

The defendant's final assignment of error centers on the claim that the prosecutor, on cross-examination of the defense witness Jarvis and over the defendant's objection, established that Jarvis and the defendant had

smoked marijuana together on a number of occasions. The claim is made that this is evidence of another crime, which is prohibited under Syllabus Point 11 of *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974):

> "Subject to exceptions, it is a well-established common-law rule that in a criminal prosecution, proof which shows or tends to show that the accused is guilty of the commission of other crimes and offenses at other times, even though they are of the same nature as the one charged, is incompetent and inadmissible for the purpose of showing the commission of the particular crime charged, unless such other offenses are an element of or are legally connected with the offense for which the accused is on trial."

This perennial ground of error[7] is virtually impossible to collate because of the almost infinite variety of its occurrence at trial. The formal statement of the rule found in *Thomas* is that proof of the defendant's commission of other crimes is not admissible unless such other crimes fall within certain enumerated exceptions. It is the generality of these exceptions[8] that causes confusion. To echo the words of Dean McCormick: "Thus

---

[7] *See, e.g., State v. Frasher*, ____ W.Va. ____, 265 S.E.2d 43 (1980); *State v. Kennedy*, 162 W.Va. 244, 249 S.E.2d 188 (1978); *State v. Adams*, 162 W.Va. 150, 247 S.E.2d 475 (1978); *State v. Spicer*, 162 W.Va. 127, 245 S.E.2d 922 (1978); *State v. Arnold*, 159 W.Va. 158, 219 S.E.2d 922 (1975); *State v. Ramey*, 158 W.Va. 541, 212 S.E.2d 737 (1975), *overruled in part, State v. McAboy*, 160 W.Va. 497, 236 S.E.2d 431 (1977); *State v. Wassick*, 156 W. Va. 128, 191 S.E.2d 283 (1972); *State v. Simmons*, 148 W.Va. 340, 135 S.E.2d 252 (1964); *State v. Evans*, 136 W.Va. 1, 66 S.E.2d 545 (1951).

[8] The following exceptions were given in Syllabus Point 12 of *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974):

"The exceptions permitting evidence of collateral crimes and charges to be admissible against an accused are recognized as follows: the evidence is admissible if it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; and (5) the identity of the person charged with the commission of the crime on trial."

does the serpent of uncertainty crawl into the Eden of trial administration."[9]

Because of its amorphous qualities, the collateral crime principle is often mistaken for other evidentiary rules, and perhaps not without reason. Evidence of other crimes obviously reflects adversely on the character of the defandant. Yet, it is seldom that the collateral crime principle is viewed from this standpoint. *Compare* § 43 of McCormick, *Evidence* (2d ed. 1972) *with* § 190. While a defendant cannot be impeached with his prior criminal conviction under *State v. McAboy*, 160 W.Va. 497, 236 S.E.2d 431 (1977), it is possible to have a prior conviction which may come within one of the collateral crime exceptions. *Atwell v. Arkansas*, 426 F.2d 912 (8th Cir. 1970); *cf. Sanabria v. United States*, 437 U.S. 54, 57 L. Ed. 2d 43, 98 S.Ct. 2170 (1978) (state crime an element of federal crime). In these evidentiary matters, it is useless to pretend that precise categories exist into which all evidentiary matters can neatly fit.

As demonstrated by *Thomas*, the underlying purpose of the rule barring collateral crimes is to prevent undue prejudice to the defendant by precluding the prosecutor from presenting to the jury prior criminal offenses that bear no relationship to the criminal charge for which the defendant is being tried. *See* McCormick, *Evidence* (2d ed. 1972), at 447, and authorities cited therein.

In *State v. Nicholson*, 162 W.Va. 750, 252 S.E.2d 894 (1979), this Court suggested that the trial courts seek advance disclosure by the prosecution of the nature of any collateral crime that it intends to present at trial, in order that the court have the opportunity to determine if "its probative value is outweighed by the risk that its admission will create substantial danger of undue prejudice to the defendant." [252 S.E.2d at 898]. *Nicholson's* recognition of a balancing test and the exercise of trial court discretion fully comports with our traditional rule that in evidentiary matters, considerable flexibility is

---

[9] McCormick, *Evidence* (2d ed. 1972) at 85-86.

accorded the trial court. *State v. Vance,* 162 W.Va. 467, 250 S.E.2d 146 (1978); *State v. Dunn,* 162 W.Va. 63, 246 S.E.2d 245 (1978); *State v. Ellis,* 161 W.Va. 40, 239 S.E.2d 670 (1977); *State v. Starr,* 158 W.Va. 905, 216 S.E.2d 242 (1975); *State v. Moubray,* 139 W.Va. 535, 81 S.E.2d 117 (1954); *State v. Lewis,* 133 W.Va. 584, 57 S.E.2d 513 (1949).

In the present case, we decline to make a mechanical analysis of the collateral crime issue, but rather base our determination on the record as to whether the evidence presented was sufficiently prejudicial to warrant reversal. In other cases, we have adopted this approach of refusing to view the claimed error through the "narrow window of the incident itself." *State v. Cokeley,* 159 W.Va. 664, 226 S.E.2d 40, 44 (1976); *State v. Starkey,* 161 W.Va. 517, 244 S.E.2d 219, 226 (1978). We discussed our doctrine of nonconstitutional harmless error at some length in *State v. Atkins,* 163 W.Va. 502, 261 S.E.2d 55, 59 (1979), and in Syllabus Point 2 formulated the following standard:

> "Where improper evidence of a nonconstitutional nature is introduced by the State in a criminal trial, the test to determine if the error is harmless is: (1) the inadmissible evidence must be removed from the State's case and a determination made as to whether the remaining evidence is sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt; (2) if the remaining evidence is found to be insufficient, the error is not harmless; (3) if the remaining evidence is sufficient to support the conviction, an analysis must then be made to determine whether the error had any prejudicial effect on the jury."

In *Atkins,* we also reviewed factors that should be considered in determining whether a given error is prejudicial, among which were: "[W]hether the record reveals that the error was repeated or singled out for special emphasis in the State's argument" and whether "the error became the subject of a special instruction to

the jury, or produced question[s] from the jury." We also stated that "[I]f the error is related to critical testimony of the defendant, the more likely that it will be deemed prejudicial." A further consideration is "the cumulative effect of the error in the context of the entire trial ... that there may be error which, standing alone, is not sufficient to require a reversal." We also acknowledged the importance of "the overall quality of the State's proof." [261 S.E.2d at 62-63].

In the present case, the sole evidence of a collateral crime involved a question on cross-examination by the prosecutor to the defense witness Jarvis concerning his smoking marijuana with the defendant on prior occasions.[10]. On the direct examination, Jarvis had testified that he was present in the car during the time that the prosecution alleged a sale of marijuana occurred, and stated that there was no such sale. Instead, according to Jarvis, everyone in the car, including the undercover officer Sizemore and the alleged informant Marian Snider, smoked marijuana which was obtained from a bag under the car's dashboard.

The defendant's testimony was similar to that of Jarvis. He was asked on cross-examination, without objection, if he had smoked marijuana on other occasions with Jarvis, and replied "yes."

When the error is tested in the light of the factors outlined in *Atkins*, we conclude that it was harmless. There was no repetition of the question concerning prior smoking of marijuana so as to unduly emphasize the matter with the jury. The State made no reference to this point in its closing argument. The question did not

---

[10] The cross-examination testimony was:
"Q. How long have you known the defendant in this case?
"A. All my life.
"Q. How often have you smoked marijuana with him?
"[Defense Attorney] I object to that, your Honor.
"THE COURT: Overruled.
"A. How often? It's hard to say. I don't know.
"Q. Numerous times?
"A. Yes, I smoked with him a good bit."

relate to any critical testimony of the defendant. Moreover, we find no other error which might give cumulative effect to this error. Finally, the quality of the State's case rested on direct, rather than circumstantial, evidence. We recognize that there were factual conflicts in the case, but these were resolved by the jury in the State's favor. As we stated in *Atkins*, "the jury's verdict of guilty is taken to have resolved factual conflicts in favor of the State." [261 S.E.2d at 62-63].

Defendant relies on *United States v. Powell*, 587 F.2d 443 (9th Cir. 1978), which found questions relating to the defendant's prior smoking of marijuana to be objectionable, but in *Powell* there were several other substantive grounds of error which contributed to the reversal of the case. Other cases cited by the defendant reveal either that other grounds for reversal existed or, if the prior use was of a prohibited substance different than or the same as the one involved in the trial, the error was deemed harmless. *United States v. Marques*, 600 F.2d 742 (9th Cir. 1979), *cert. denied*, ____ U.S. ____, 62 L. Ed. 2d 649-50, 100 S.Ct. 674 (1980); *United States v. Masters*, 450 F. 2d 866 (9th Cir. 1971), *cert. denied*, 405 U.S. 1044, 31 L. Ed. 2d 587, 92 S.Ct. 1329 (1972); *Van Nostrand v. State*, 51 Ala. App. 494, 286 So.2d 903 (1973), *cert. denied*, 29 Ala. 799, 286 So.2d 906.[11]

Certainly, our finding that the question here involved does not constitute reversible error should not be taken as an approval of this practice. The prosecution proceeds at its peril when it embarks on this line of questioning.

For the foregoing reasons, we find no reversible error and, therefore, affirm defendant's conviction.

*Affirmed.*

---

[11] It cannot be denied that the decisions in this area are impossible to harmonize. In at least two cases, courts have reversed the conviction on this basis alone, without discussion of the question of harmless error. *Anglin v. State*, 151 Ga. App. 570, 260 S.E.2d 563 (1979); *Eccles v. Commonwealth*, 214 Va. 20, 197 S.E.2d 332 (1973).