383 S.E.2d 32

**STATE of West Virginia**

v.

**John D. ROBINETTE.**

No. 18313.

Supreme Court of Appeals
of West Virginia.

Rehearing Denied March 28, 1989.

Brenda Craig Ellis, Asst. Atty. Gen., Charleston, for appellant.

Frank C. Mascara, Fairmont, for John D. Robinette.

MILLER, Justice:

This is an appeal from a final order of the Circuit Court of Barbour County, dated April 7, 1987, which sentenced the defendant below, John D. Robinette, to a term of life imprisonment in the penitentiary following his conviction, by a jury, of the offense of murder of the first degree. The defendant contends that the trial court erred in allowing the State to introduce evidence of false statements he made on his employment application and that there was insufficient evidence of guilt to support the conviction. We find no error warranting reversal of the conviction, and we affirm the judgment of the circuit court.

On December 15, 1985, Leanna Ruth Robinette, the defendant's wife of eleven months, drowned in the Tygart Valley River near Moats Falls in Barbour County. According to a statement the defendant gave to the police, he and his wife had driven to the area and walked to a large rock along the river to observe the effects of recent flooding. The defendant stated that he had returned to the car alone to retrieve his cigarettes, when he turned and saw his wife chasing her hat along the rock. The defendant stated that when he began walking down the path to the rock, he heard his wife yell out his name. When he looked up, he saw only her arm and head in the swiftly moving water. The defendant stated that he attempted to intercept his wife downstream, but was unsuccessful. The defendant then drove to a nearby tavern where he called for assistance. Mrs. Robinette's body was recovered from the headwaters of Tygart Lake on February 6, 1986.

Upon investigating the incident, the police uncovered several suspicious circumstances. At the scene, officers discovered that they could barely communicate over the roar of the receding waters and that someone shouting from the rock where Mrs. Robinette was last seen could not be heard at any distance, much less from the place where the defendant claimed to have heard her call out his name. The defendant subsequently gave other statements containing inconsistencies about where he was standing when he heard his wife cry out.

The police then learned that in November, 1985, the defendant, an insurance agent, had purchased a $100,000 life insurance policy on his wife. The policy contained a double-indemnity clause in the event of accidental death and named the defendant as the sole beneficiary. A comparison of known handwriting samples revealed that the defendant had signed his wife's name to the policy application, the initial premium check, and a withdrawal draft authorizing automatic payment of future premiums from the couple's joint checking account.

In May, 1986, the grand jury returned an indictment charging the defendant with murder of the first degree in the death of his wife. At his trial in March, 1987, Mrs. Robinette's teen-aged daughter by a former marriage testified that her mother had discovered several incomplete insurance policy applications on the defendant's desk in November, 1985, and had seemed concerned and upset by the discovery. Mrs. Robinette's daughter also testified that her mother was terrified of water and that on the morning of her mother's death, the defendant had uncharacteristically refused to allow her to accompany them on their expedition. Finally, Mrs. Robinette's daughter stated that the version of the incident that the defendant related to her on the evening of her mother's death varied in several respects from the statements he gave the police.[1]

---

1. Mrs. Robinette's daughter testified that the defendant told her that he had returned to the car to get a camera, that he had seen the wind

blow his wife's hat into the water, that she had called his name as she ran along the rock to

The defendant's testimony at trial also differed from the statements he gave the police with respect to where he was standing when he saw his wife chasing her hat and heard "someone" yell out his name. The defendant testified that he refused to allow his stepdaughter to accompany him and his wife that morning because they intended to pick up her Christmas present. The defendant also testified that he had purchased the life insurance policy in order to fulfill a required quota at work, and it was uncontested that he had never filed a claim against the policy.

The defendant admitted that he had signed his wife's name to the policy application, the premium check, and the automatic withdrawal card. The defendant further testified that his wife was aware of the policy and had not appeared to object to it at the time. The defendant stated that he was aware the policy had a contestability clause, which allowed the insurance company to contest the policy if death occurred within two years of its issuance. He also stated that he knew the policy was invalid because he had signed his wife's name to the application.

On March 27, 1987, the jury returned a verdict finding the defendant guilty of first-degree murder with a recommendation of mercy. The defendant's motion for a new trial was overruled, and, by order dated April 17, 1987, the circuit court sentenced him to life imprisonment with the possibility of parole.

retrieve it, and that he had seen her slip on the rock and fall into the water.

2. The defendant stated that he was advised by an interviewer to "puff up" his qualifications.

3. Rule 404(b), W.Va.R.E., provides:

"*Other Crimes, Wrongs, or Acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

## I.

The defendant first contends that the trial court erred in allowing the State to introduce evidence that he had falsely declared on his job application that he was a graduate of Pennsylvania State University and had taught school in Pennsylvania for several years. On the first day of trial, the court granted a defense motion to suppress this evidence unless the State showed that it was relevant or the defendant put his character and reputation in issue. During the prosecution's cross-examination of the defendant, however, the court ruled that because the credibility of a witness is always an issue and since the defendant had testified as to his employment by the insurance company, his answers to the questions on his job application were admissible. The defendant then admitted on the stand that he had given false answers.[2]

The defendant does not complain of the admission of the forged documents surrounding his procurement of the life insurance policy naming him as the sole beneficiary. This evidence obviously was admissible to supply the defendant's motive for killing his wife. Rule 404(b) of the West Virginia Rules of Evidence provides that evidence of other crimes, wrongs, or acts is admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.[3] This rule was recognized in our law prior to the adoption of our Rules of Evidence. *E.g., State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974).[4] Nor can it be disputed that such evidence can be utilized against a

4. The common-law rule was set out in Syllabus Point 12 of *Thomas:*

"The exceptions permitting evidence of collateral crimes and charges to be admissible against an accused are recognized as follows: the evidence is admissible if it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; and (5) the identity of the person charged with the commission of the crime on trial."

In *State v. Dolin,* 176 W.Va. 688, 692–693, 347 S.E.2d 208, 213 (1986), we recognized that this list of exceptions is not intended to be exhaustive.

defendant.[5] *E.g., State v. Headley,* 168 W.Va. 138, 282 S.E.2d 872 (1981); *State v. Messer,* 166 W.Va. 806, 277 S.E.2d 634 (1981); *State v. Harris,* 166 W.Va. 72, 272 S.E.2d 471 (1980); *State v. Haverty,* 165 W.Va. 164, 267 S.E.2d 727 (1980); *State v. Bush,* 163 W.Va. 168, 255 S.E.2d 539 (1979). Although we have recognized that other crimes, wrongs, or acts must have occurred reasonably close in time to the present offense,[6] the defendant's forgery of his wife's name occurred less than one month before her death.

▪ We also note that the defendant's employment with the insurance company began only several months before his wife's death. Conceivably, this was the first step that led to Mrs. Robinette's death. By securing employment as an insurance agent, the defendant was in a much more favorable position to obtain beneficiary status on the policy. The making of false statements as to his credentials on his employment application was necessary to secure a position for which he might not otherwise have been hired.

We believe the State could properly introduce this evidence as an integral part of the development of the facts surrounding his motive for killing his wife. We have in a variety of cases permitted evidence of other wrongdoing to provide an explanation of the defendant's motive. *State v. Gum,* 172 W.Va. 534, 309 S.E.2d 32 (1983) (prosecution for murder, alleged blackmail of the defendant by murder victim admissible); *State v. Craft,* 165 W.Va. 741, 272 S.E.2d 46 (1980) (breaking and entering prosecution, evidence that defendant used tools stolen in subsequent attempt at breaking and entering admissible). Other courts have arrived at the same conclusion under Rule 404(b) or its common-law counterpart. *See United States v. Birney,* 686 F.2d 102 (2d Cir.1982); *Dorman v. State,* 622 P.2d 448 (Alaska 1981); *Edgemon v. State,* 275 Ark. 313, 630 S.W.2d 26 (1982); *State v. Williams,* 360 N.W.2d 782 (Iowa 1985); *State v. Slocum,* 130 N.J.Super. 358, 327 A.2d 244 (1974); *Taylor v. State,* 640 P.2d 554 (Okla.Crim.1982).

▪ We recognize that evidence of other crimes or wrongs admissible under Rule 404(b) is subject to the provisions of Rule 403, which provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." This balancing test existed in our prior law. *See* Syllabus Point 15, *State v. Thomas, supra.*[7] *See also State v. Dolin,* 176 W.Va. 688, 347 S.E.2d 208 (1986); *State v. Nicholson,* 162 W.Va. 750, 252 S.E.2d 894 (1979), *overruled on other grounds, State v. Petry,* 166 W.Va. 153, 273 S.E.2d 346 (1980).

▪ Of the Rule 403 factors, we believe the only issue is whether the admission of the evidence was prejudicial. We note that the falsification of the defendant's employment application was neither emphasized

---

**5.** The use of evidence of other crimes or wrongs to prove character is controlled by Rule 404(a)(1), which provides that such evidence is not admissible unless offered first by the defendant. It should be noted that Rule 608(b), relating to cross-examination of witnesses as to specific instances of conduct bearing on truthfulness or untruthfulness, does not apply to the accused and, thus, differs from Federal Rule 608(b). *See* F. Cleckley, *Handbook on Evidence for West Virginia Lawyers* 196–97 (2d ed. 1986). Also, Rule 609(a)(1) limits the use of evidence of other crimes to impeach the credibility of a defendant to convictions for perjury and false swearing. This differs from Federal Rule 609(a)(1). *See* F. Cleckley, *supra* at 180.

**6.** *See State v. Messer, supra;* Syllabus Point 7, *State v. Withrow,* 142 W.Va. 522, 96 S.E.2d 913 (1957); Syllabus Point 3, *State v. Gargiliana,* 138 W.Va. 376, 76 S.E.2d 265 (1953); Syllabus Point 2, *State v. Evans,* 136 W.Va. 1, 66 S.E.2d 545 (1951); Syllabus Point 4, *State v. Lewis,* 133 W.Va. 584, 57 S.E.2d 513 (1949).

**7.** Syllabus Point 15 of *Thomas* states:

"In the proper exercise of discretion, the trial court may exclude evidence of collateral crimes and charges if the court finds that its probative value is outweighed by the risk that its admission will create substantial danger of undue prejudice or confuse the issues or mislead the jury or unfairly surprise a party who has not had reasonable ground to anticipate that such evidence would be offered."

by the prosecutor nor mentioned in closing arguments. Moreover, the defendant's credibility had already been impeached by his admissions concerning his falsification of the insurance policy application, premium check, and bank records and by the other inconsistencies in his story. These were far more serious wrongs, as they directly and substantially evidenced the defendant's motive. In view of these factors, we cannot say that the evidence was so prejudicial as to warrant its exclusion.

## II.

■ The defendant also challenges the sufficiency of the evidence to support his conviction. In this regard, we stated the following rule in Syllabus Point 1 of *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978):

"In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done."

In *State v. Phillips*, 176 W.Va. 244, 245, 342 S.E.2d 210, 212 (1986), we recognized that

"circumstantial evidence should always be scanned with caution. Syl. pt. 2, *State v. Bennett*, 93 W.Va. 548, 117 S.E. 371 (1923).

"In particular, in syllabus point 2 of *State v. Dobbs*, 163 W.Va. 630, 259 S.E.2d 829 (1979), this Court held:

'Circumstantial evidence will not support a guilty verdict, unless the fact of guilt is proved to the exclusion of every reasonable hypothesis of innocence; and circumstances which create only a suspicion of guilt but do not prove the actual commission of the crime charged, are not sufficient to sustain a conviction.'

"However, this Court recognized in syllabus point 4 of *State v. Bailey*, 151 W.Va. 796, 155 S.E.2d 850 (1967), that: '[t]he weight of circumstantial evidence, as in the case of direct evidence, is a question for jury determination, and whether such evidence excludes, to a moral certainty, every reasonable hypothesis, other than that of guilt, is a question for the jury.' "

In Syllabus Point 4 of *Phillips*, we also recognized:

" 'If, on a trial for murder, the evidence is wholly circumstantial, but as to time, place, motive, means, and conduct it concurs in pointing to the accused as the perpetrator of the crime, he [or she] may properly be convicted.' *State v. Beale*, 104 W.Va. 617, 632–33, 141 S.E. 7, 13 (1927)."

Here, the evidence, taken in the light most favorable to the State, showed that the defendant was nearby when his wife entered the waters of the Tygart Valley River on December 15, 1985, and had been particularly insistent that his stepdaughter not accompany them there. Although the defendant stated that he had heard his wife call out his name, presumably when she fell into the river, police officers on the scene soon after were unable to make themselves heard in the same area over the roar of the swollen river. The defendant made various statements containing a number of other inconsistencies. He had taken out a sizeable insurance policy on his wife's life, naming himself as beneficiary, shortly before her death and had signed his wife's name to the policy application, the first premium check, and the automatic withdrawal card without her knowledge.

We believe this evidence satisfies the test set out in *Phillips*. Accordingly, we conclude that the evidence, though circumstantial, was sufficient to support the conviction. *See Bennett v. State*, 297 Ark. 115, 759 S.W.2d 799 (1988); *Buenoano v. State*, 478 So.2d 387 (Fla.App.1985); *State v. Lenza*, 582 S.W.2d 703 (Mo.App.1979), *cert.*

*denied,* 444 U.S. 1021, 100 S.Ct. 678, 62 L.Ed.2d 652 (1980).

For the reasons stated here, we conclude that any error at trial was harmless. Accordingly, we affirm the judgment of the Circuit Court of Barbour County.

Affirmed.