Thurman Maurice **CHANNELL**,
Petitioner,

v.

**Ira M. COINER**, Warden of the West Virginia State Penitentiary, Respondent.

No. 68–42–E.

United States District Court
N. D. West Virginia.

April 2, 1969.

W. Del Roy Harner, (court appointed) Elkins, W. Va., for petitioner.

C. Donald Robertson, Atty. Gen. of West Virginia, Morton I. Taber, Asst.

Atty. Gen., Charleston, W. Va., for respondent.

## MAXWELL, Chief Judge.

Thurman Maurice Channell is presently on parole from the further execution of an indeterminate sentence of not less than one nor more than ten years upon his conviction for breaking and entering, imposed on January 24, 1966, by the Circuit Court of Randolph County, West Virginia. The sentence was suspended at that time and Petitioner was placed on probation for a period of two years. On February 24, 1967, this probation was revoked by the state trial court, and the original sentence was made effective, Petitioner then being committed to the custody of the Warden of the West Virginia State Penitentiary.

Petitioner has filed a petition for federal habeas corpus with this Court, alleging proper jurisdiction under 28 U.S.C.A. § 2241 et seq. This Court appointed counsel for Petitioner, and after a full plenary hearing the case was submitted for decision.

Petitioner's sole contention is the allegation of ineffective assistance of counsel, insisting that counsel was appointed the same day his plea of guilty was entered and that counsel only conferred with Petitioner for a short time.

■ This Court initially notes that Petitioner is no longer in custody, having been placed on parole on June 17, 1968, after having filed this petition. Under the holding of Carafas v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed. 2d 554 (1968), Petitioner's release from custody does not render the case moot. This Court is therefore compelled to afford full consideration of the merits of Petitioner's allegations. See also Rine-

hart v. Boles, 286 F.Supp. 562 (N.D. W.Va.1968).

In support of his contention Petitioner claims that his court-appointed counsel spent too little time with him in personal discussion as well as with the facts and issues of the case to effectively prepare the case or to effectively represent Petitioner. It is uncontroverted that the attorney was appointed on the date of Petitioner's arraignment. Petitioner testified that after counsel was appointed, they conferred in an adjoining room to the circuit courtroom; that he was advised to plead guilty. Petitioner testified that counsel was advised that he was involved with the crime only because he owned and drove the car that was used in the crime. He stated that he attempted to explain that, although he was present with those who did break and enter, he was an "accessory," and not a participant in the actual breaking and entering. Petitioner concluded that after he thought it over, during the conference with the attorney, he, the Petitioner, believed his attorney's advice was proper and he should plead guilty.

On direct examination Petitioner stated that his court-appointed counsel did not advise him of his right to plead not guilty and to be afforded a jury trial. On cross-examination, however, he was shown a copy of the transcript of his arraignment proceedings in the state court.[1] Whereupon, Petitioner then admitted before this Court that he was advised by his court-appointed counsel of his right to a jury trial and of the possible sentence that could be imposed if convicted. Petitioner maintained, somewhat inconsistently, that he was not advised of his corresponding right to plead not guilty.

Petitioner's state court-appointed trial attorney testified at the plenary hear-

---

[1]. As shown by an uncertified copy of the transcript, as included as a part of the petition in this case, Petitioner's court-appointed attorney made the following statement to the court.

In regard to Felony Indictment 9085, State of West Virginia against Robert Lindsay and Thurman Channel, I have explained to him the possible penalties for a conviction for the offense with which he is charged, and I have explained to him his right to a jury trial. He now advises me he would like to plead to the offense with which he is charged.

ing held in this Court that he recalled being appointed to represent Petitioner, and that from the outset, Petitioner was not anxious to have an attorney.[2] He recalled discussing the case with Petitioner, and that during their discussion Petitioner stated he had been drinking heavily during the night of the crime. He stated that Petitioner informed him that he had told a state trooper of his involvement in the crime. He testified further that from their initial contact, Petitioner was very anxious to plead guilty, and insisted on pleading guilty throughout their entire conference. Petitioner's attorney testified that, notwithstanding Petitioner's persistence, he fully advised and explained to Petitioner his right to plead not guilty and receive a jury trial on the issue of guilt or innocence, and of his own willingness to represent Petitioner at such a trial.

Petitioner's attorney testified additionally that, on learning Petitioner had no prior record, he made inquiry and conferred with the prosecuting attorney, prior to Petitioner's arraignment, about the possibility of probation for Petitioner. He testified further that at the time, he felt there was a strong chance Petitioner would receive probation, and informed Petitioner of this strong possibility, so that Petitioner knew, when he entered his plea of guilty, that probation was likely. Probation was subsequently

requested, and, after the usual investigation, the motion was granted and Petitioner was placed on probation on March 25, 1966. Upon violation of this probation in 1967, Petitioner was then imprisoned.

In his petition, Petitioner alleges that his conference with his attorney lasted no more than ten minutes. Petitioner offered no testimony at his evidentiary hearing as to the length of time spent with his attorney. Petitioner's trial attorney stated that there was no pressure exerted to conclude the conference, that no matters were hurried over, and that, anxious to terminate the matter and to plead guilty, Petitioner appeared wholly satisfied with the length of the conference.

▮▮▮▮ One seeking relief by means of habeas corpus must prove his allegations by a preponderance of the evidence. Post v. Boles, 332 F.2d 738 (4th Cir. 1964), cert. denied 380 U.S. 981, 85 S.Ct. 1346, 14 L.Ed.2d 274 (1965); Stewart v. Smyth, 288 F.2d 362 (4th Cir. 1961). See generally 39 C.J.S. Habeas Corpus § 100c (1944). But under the holding of Fields v. Peyton, 375 F.2d 624 (4th Cir. 1967), if counsel is appointed so close to trial that he is not afforded a reasonable opportunity to investigate and prepare the case, this is inherently prejudicial to the accused, and the mere show-

---

2. This is also reflected by the transcript of the arraignment proceedings had in Petitioner's case:

    THE COURT: Do you have an attorney?
    THE DEFENDANT: No, sir, I don't.
    THE COURT: Do you desire an attorney?
    THE DEFENDANT: Well, no, sir, I don't.
    THE COURT: Well, of course, you understand you are entitled to one?
    THE DEFENDANT: Well, yes, sir, I know that. I was an accomplice and everything in that there situation, so I don't know whether you can help me out or not.
    THE COURT: But you understand the Court will appoint one if you don't have money to employ one?
    THE DEFENDANT: Well, if I need one—Bonn Brown. I have had him

for an attorney before on account of my disability and everything.
    THE COURT: But you don't have him employed now?
    THE DEFENDANT: No.
    THE COURT: Do you have any money to employ one?
    THE DEFENDANT: No, sir. I just draw disability.
    THE COURT: Well, if you just don't have money to employ one, I can employ one for you.
    THE DEFENDANT: Well, who would you employ?
    THE COURT: I would appoint Mr. Busch.
    THE DEFENDANT: Well you could appoint one for me, sir.
    THE COURT: I didn't hear you.
    THE DEFENDANT: I say, if you will.

ing of such a late appointment establishes a prima facie case of denial of effective assistance of counsel, thereby shifting the burden of proof of lack of prejudice to the Respondent. This is a clear and sharp definition plus the application of a particular factual situation to the basic and general principles set out in Avery v. Alabama, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377 (1940), and Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), which hold that the formality of appointment does not satisfy due process, where there is not sufficient time for investigation and preparation afforded to counsel.

■ It is the opinion of this Court that Petitioner has failed to bring his case within the application of *Fields.* His bare allegation in his petition that they conferred for only ten minutes is supported by no testimony. Petitioner offered no testimony at the plenary hearing as to the length of the conference. *Fields* does not purport to set down an arbitrary time limit that will be said to constitute "a late appointment." Only the facts of each case will govern whether sufficient time was afforded an appointed counsel to analyze and prepare a case. This Court believes that the facts of this case do not show such a late appointment as to fall within the rule set out in *Fields.*

■ Assuming, *arguendo,* that Petitioner's contention that he and his counsel conferred for only ten minutes is true, so that it might come within the "late appointment" concept enunci-

ated in *Fields,* with the resulting presumption of prejudice to Petitioner and establishment of a prima facie case of ineffective counsel, Respondent nevertheless has effectively carried his burden of proof and rebutted the presumptions. The weight of the evidence is strongly in Respondent's favor that Petitioner suffered no prejudice, and that his appointed counsel accomplished the maximum benefit for Petitioner by reason of his representation. The inuendo suggested by Petitioner, that he was prejudiced due to his counsel's ignoring a defense, i. e., that he was not guilty of the charge of breaking and entering, but was possibly guilty as an accessory, raises no issue of fact and sustains no basis in law.[3] As such it lends no support to his basic contention of ineffectiveness of counsel.

Upon a full consideration of all the testimony presented, this Court must conclude that counsel was effective in all aspects of this representation. Petitioner was persistent in expressing his desire to plead guilty. Yet, his attorney fully discussed the case with him, properly and fully advised Petitioner of his rights, and, upon investigating and discovering that in all likelihood probation was available and highly probable, advised Petitioner of his best judgment, that a plea of guilty was the most beneficial course to follow. It is difficult to perceive additional areas that could be examined by Petitioner's attorney or to find additional benefits that could accrue to Petitioner, than were performed and accomplished under the facts

---

3. W.Va.Code § 61–11–6 (Michie 1966) provides in part as follows:

In the case of every felony, every principal in the second degree, and every accessory before the fact, shall be punishable as if he were the principal in the first degree * * *.

A principal in the second degree within the meaning of this section is defined as one who is present, aiding and abetting another in the commission of an offense. State ex rel. Brown v. Thompson, 149 W.Va. 649, 142 S.E.2d 711 (1965); State v. Franklin, 139 W.Va. 43, 79 S. E.2d 692 (1953). An element that is

necessary in comprising the status of an accessory, either before or after the fact, is *absence* at the time and place of the commission of the principal felony offense. W.Va.Code § 61–11–6 (Michie 1966). State ex rel. Brown v. Thompson, *supra.* From an analysis of the foregoing it is clear that Petitioner in this case enjoyed the classification of principal in the second degree, because of his *presence* at the crime, participating and assisting in escape. As such, he was properly before the court under the charge of the principal offense.

here. As such, an extension of time would have been of no purpose and a delay caused by the same would be unjustified.

It will suffice to conclude that Petitioner's counsel's representation was far superior to the standard of ineffectiveness defined by the courts— representation in such an unprofessional manner as to shock the conscience of the court, or to constitute a farce of the trial or to produce a mockery of justice. Knowles v. Gladden, 378 F.2d 761 (9th Cir. 1967); Root v. Cunningham, 344 F.2d 1 (4th Cir. 1965); United States ex rel. Feeley v. Ragen, 166 F.2d 976 (7th Cir. 1948).

For the reasons stated above, an order will be entered denying the relief sought and dismissing the petition.