STATE OF WEST VIRGINIA

*v.*

MILDRED G. HARRIS

(No. 14231)

Decided December 2, 1980.

*Leo Catsonis and Thomas L. Linkous* for plaintiff in error.

*Chauncey H. Browning,* Attorney General, *Richard S. Glaser, Jr.,* Assistant Attorney General, for defendant in error.

CAPLAN, JUSTICE:

Mildred Harris, the appellant, was indicted on May 12, 1976 by the grand jury serving the Circuit Court of Mercer County for the unlawful delivery of marijuana to a juvenile. Upon trial by jury she was found guilty and was sentenced to the West Virginia State Prison for Women for a term of one to five years.

While the appellant assigns several errors, the following assignment is dispositive of this case and requires a reversal of the judgment below and a remand for a new trial:

> The Court erred in permitting the introduction of alleged prior criminal activities, not the subject of this conviction, by the appellant, concerning eight and one-half pounds of marijuana allegedly found at appellant's home on a prior occasion.

The prosecution's case revolved around the testimony of the juvenile, the State's only witness to offer direct evidence regarding the actions charged in the indictment. The defense called five witnesses, including the then defendant. The cross-examination of these witnesses by the State tended to show prior criminal activity by the appellant.

The only evidence concerning the eight and one-half pounds of marijuana was introduced into the case by the State on cross-examination. Following is a portion of the cross-examination by the State of Paula Harris, the appellant's daughter:

> Q. You were present in the house on August 27 when the Mercer County Sheriff's Department found eight and a half pounds of baggies out there, weren't you?
>
> A. Yes.
>
> Q. Don't you call eight and a half pounds of marijuana a lot?
>
> A. Yes, when somebody else put it there.
>
> MR. CUNNINGHAM: We object to this line of examination, Your Honor.
> (Objection overruled)
> . . .
>
> Q. They found eight and a half pounds in a trash bag out there in the wash room, didn't they?
>
> A. I don't know. I wasn't with them.

The baggie of marijuana, allegedly received from the appellant by the juvenile was received, according to the

latter's testimony, on December 3rd or 4th. The quantity alluded to in the above quoted testimony was obtained from the appellant's home, according to the prosecuting attorney's question on cross-examination, on August 27th, an occasion entirely separate and distinct from that contained in the subject indictment.

Gene Hagey, a truck driver who boarded at the Harris home in December 1975 testified that he had seen no marijuana around that home. On cross-examination he testified that on August 27th, he was living in a trailer, not in the Harris home. He further testified on cross-examination:

Q. Never did see any [Marijuana] around the house though?

A. No, sir.

Q. Large quantities of it?

A. No, sir.

Q. Fifty-five baggies, for instance?

A. No, sir.

Q. Eight and a half pounds?

A. No, sir.

Q. That is a lot, isn't it? Never did see anything like that?

A. No, sir.

Again, on cross-examination of Ruth Coeburn, the prosecuting attorney asked about the eight and one-half pounds of marijuana allegedly found in the Harris home on August 27th. She denied that she had any knowledge of that.

The next time reference to the eight and one-half pounds of marijuana was brought into the case was by the prosecuting attorney during his cross-examination of Robert Harris, the appellant's husband. The following testimony appears in the trial transcript:

Q. What about the eight and a half pounds they found on August 27th? Was that yours too?

(An objection was interposed and overruled)

. . .

Q. Repeat what you said, Mr. Harris.

A. I said I didn't have all this trouble before I signed a brutality complaint against the Bluefield City Police Officers for abusing us, or one of my daughters.

Q. Who did that? When did they do that?

A. August 2, 1975.

Q. So they went out and planted that eight and a half – – –

A. If they got it there they did, because I certainly didn't own it.

Finally, upon cross-examination of the then defendant, the prosecution again introduced into evidence reference to the marijuana allegedly found in the Harris home in August 1975.

Q. You had eight and a half pounds out there in August?

A. I didn't know I had it.

Q. You have got a four room house?

A. Thats right.

Q. Four room house, eight and a half pounds of marijuana. That is a lot of marijuana.

. . .

Q. Somebody planted it on you?

A. It had to be.

The question of when evidence of collateral offenses can be admitted was extensively covered in *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974):

It is a well-established common-law rule that in a criminal prosecution, proof which shows or tends to show that the accused is guilty of the commission of other crimes and offenses at other times, even though they are of the same nature as the one charged, is incompetent and inadmissible for the

purpose of showing the commission of the particular crime charged, unless such other offenses are an element of or are legally connected with the offense for which the accused is on trial. State v. Hudson, 128 W.Va. 655, 37 S.E.2d 553, 163 A.L.R. 1265 (1946).

The rationale for the rule announced in *Thomas* is that when one is placed on trial for the commission of a particular offense, he is to be convicted, if at all, on evidence of the specific charge against him. The purpose of the rule excluding evidence in a criminal prosecution of collateral offenses is to prevent a conviction for one crime by the use of evidence tending to show that the accused engaged in other legally unconnected criminal acts, and to prevent the inference that because the accused engaged or may have engaged in other crimes previously, he was more liable to commit the crime for which he is being tried. *Thomas, supra.* The rule condemns not only evidence of other offenses not independently relevant, but also questions which, although negatively answered, carry with them the insinuation that the accused committed the other crimes. McCormick, *Evidence* § 190, fn. 32 p. 448 (2nd Ed. 1972). Thus, indirect proof or a suggestion of such unrelated crimes by the prosecution or by witness remarks is equally improper for presentation before a jury. See, *State v. Kennedy*, 162 W.Va. 244, 249 S.E.2d 188 (1978).

In this case, the appellant was indicted for "unlawfully, feloniously, knowingly and intentionally [delivering to a juvenile in December 1975] a certain controlled substance .... to wit: Marijuana." The testimony relating to eight and one-half pounds of marijuana allegedly present in the Harris home on August 27, 1975 had no legal connection to the crime charged in the indictment of unlawful delivery of marijuana in December 1975. The evidence provided no essential link to the State's case and did not tend to establish any of the constituent elements of the crime of which the defendant was accused. The matter was collateral since the cross-examining party would not have been entitled to prove it in support of his case. See, *State v. Ramey*, 158 W.Va. 541, 212 S.E.2d 737 (1975). The admission

of evidence tending to show that the accused engaged in the commission of other crimes and offenses at other times here compelled the appellant to meet charges of which she had no notice, which confused her defense strategy and which raised issues which diverted the jury's attention. *Thomas, supra.*

Applying the Thomas rule to the instant case, it was reversible error to permit the State to introduce evidence on cross-examination of the eight and one-half pounds of marijuana, alluded to above, "unless such other offenses [8-1/2 lbs. of marijuana] are an element of or are legally connected with the offense for which the accused is on trial." Clearly, the alleged offense was not an element of or legally connected with the offense for which the appellant was on trial.

For the reasons herein stated, we find that the court committed reversible error in allowing, over objection, evidence of collateral offenses raised by the prosecution on cross-examination of the defense witnesses. The judgment of the Circuit Court of Mercer County is therefore reversed.

*Reversed.*