STATE OF WEST VIRGINIA

*v.*

DAVID UNDERWOOD

(No. 14323)

Decided September 8, 1981.

*Brent E. Beveridge* for plaintiff in error.

*Chauncey H. Browning*, Attorney General, *Richard S. Glaser, Jr.* and *Dana D. Davis*, Assistant Attorney General, for defendant in error.

MILLER, JUSTICE:

Appellant David Underwood and his wife Annette Underwood were jointly indicted for the manufacture of marijuana in violation of W. Va. Code, 60A-4-401. David Underwood was convicted by a jury in the Circuit Court of Marion County of an attempt to manufacture and was sentenced to twelve months in the county jail. Annette Underwood was found not guilty by the same jury.

The State's evidence consisted of testimony that a single marijuana plant was growing in appellant's back yard

and that the plant was tied to a bamboo stake with string. One of the appellant's neighbors testified that she saw the appellant mowing the grass in the area around the plant, but there was no evidence that either appellant or his wife ever tended the plant. A chemist employed by the West Virginia Department of Public Safety testified that the plant consisted of approximately 200 grams of marijuana leaf fragments.

Other evidence introduced against the appellant was a small plastic bag found inside the Underwood house. The bag contained approximately two grams of dried marijuana, and was found inside a purse in a closet. It is this evidence of another crime that forms the appellant's first assignment of error. The State argues that it comes within the exceptions noted in Syllabus Point 12 of *State v. Thomas*, 157 W. Va. 640, 203 S.E.2d 445 (1974).

We recently discussed the issue of admissibility of other offenses in *State v. Rector*, ____ W. Va. ____, 280 S.E.2d 597 (1981), and have noted in *State v. Haverty*, ____ W. Va. ____, 267 S.E.2d 727, 733 (1980), that "[t]his perennial ground of error is virtually impossible to collate because of the almost infinite variety of its occurrence at trial." Without attempting any extensive discussion of this subject, it is perhaps useful to reiterate the general rule, more fully elaborated in Syllabus Point 11 of *State v. Thomas, supra*, that precludes the introduction of evidence of collateral crimes. While Syllabus Point 12 of *Thomas* notes there are exceptions which enable utilization of such evidence to establish (1) motive, (2) intent, (3) the absence of mistake or accident, (4) a common scheme or plan, and (5) the identity of the defendant, we have in general narrowly construed this exception as noted by our discussion in *Rector, supra*.

Here, the marijuana found in the appellant's wife's purse can only be remotely viewed as tied to the cultivation of the marijuana plant. More important is the lack of proof of the husband's connection to the marijuana in his wife's purse, for example, that he knew of its presence, or exercised some dominion over it. This lack of proof presents

a situation analogous to *State v. Dudick*, 158 W. Va. 629, 213 S.E.2d 458 (1975), where we stated in Syllabus Point 4:

"The offense of possession of a controlled substance also includes constructive possession, but the State must prove beyond a reasonable doubt that the defendant had knowledge of the controlled substance and that it was subject to defendant's dominion and control."

While we do not suggest that evidence of another crime must be proved beyond a reasonable doubt, we do believe that there must be some testimony that links the appellant to the other crime. Were the evidence relating to manufacturing or cultivating of marijuana more direct, we might be inclined to hold this evidence of the purse marijuana to be harmless error under *State v. Atkins*, 163 W. Va. 502, 261 S.E.2d 55 (1979), *cert. denied*, 445 U.S. 904, 63 L.Ed.2d 320, 100 S.Ct. 1081 (1980). However, the State's case on manufacturing was substantially circumstantial since no one saw the appellant actually cultivating the plant.[1] We conclude that the error was not harmless.

The appellant's second assignment of error relates to the court's refusal to direct a verdict in his favor at the close of the State's evidence based on two legal theories that were advanced in two instructions which were also refused. These instructions would have advised the jury that the State had the burden of proving beyond a reason-

---

[1] The appellant does not raise error as to the insufficiency of the evidence. The few cases that have involved manufacturing under statutes which define manufacturing to include the cultivation or growing of marijuana do not attempt to formulate any general rule. They turn on the particular facts which have generally included the growing of a number of plants with the defendant being directly connected to some aspect of the growing, i.e. planting or watering. *E.g., State v. May*, 20 N.C. App. 179, 201 S.E.2d 95 (1973) (defendant observed cultivating a cornfield in which 650 marijuana plants were found in the rows among the corn plants); *Box v. State*, 541 P.2d 262 (Okla. Crim. App. 1975) (defendant admitted transplanting marijuana plant); *State v. Rutherford*, 477 P.2d 911 (Ore. Ct. App. 1970) (defendant observed digging, watering and making plot of five marijuana plants); *but see Graybeal v. State*, 13 Md. App. 557, 284 A.2d 37 (1971) (70 marijuana plants found in home sole evidence for conviction); *cf. State v. White*, ___ W. Va. ___, 280 S.E.2d 114 (1981).

able doubt that "the defendants manufactured the marijuana for the purpose of distributing or selling the marijuana and that the marijuana was not manufactured for his or her own personal use."

The instruction relating to the personal use exception is evolved from language contained in the last phrase of the definition of "manufacture" found in W. Va. Code, 60A-1-101(m):

> "(m) 'Manufacture' means the production, preparation, propogation, compounding, conversion, or processing of a controlled substance, either directly or indirectly by extraction from substances of natural origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container, *except that this term does not include the preparation or compounding of a controlled substance by an individual for his own use. . . .*" (Emphasis supplied)

We do not find that appellant's activities fall within this personal use exception. Appellant was indicted and tried for the manufacture of a controlled substance. "Manufacture" is defined to include "production," W. Va. Code, 60A-1-101(m), and "production" is defined to include "manufacture, planting, cultivation, growing or harvesting of controlled substance," W. Va. Code, 60A-1-101(u). Therefore, the prohibition against "manufacture" of a controlled substance clearly includes a prohibition against the growing of marijuana, the actual activity in which appellant engaged, since "production" is a defined term of "manufacture" and "production" is defined under W. Va. Code, 60A-1-101(u), to include planting, cultivating and growing, a point we recently made in *State v. White,* ____ W. Va. ____, 280 S.E.2d 114 (1981). In *Boring v. State,* 365 So.2d 960 (Miss. 1978), *cert. denied,* 442 U.S. 916, 61 L.Ed.2d 283, 99 S.Ct. 2835 (1979), the court reached a similar conclusion that manufacturing of a controlled substance by statutory definition included its planting, cultivation and growing:

"Manufacturing embraces production and production embraces manufacturing and planting, cultivation, growing or harvesting. Construing the two sub-sections together, it becomes apparent that the Legislature prohibited the growing of marijuana." 365 So.2d at 962.

We conclude that there are only two specific activities which are excepted from the term "manufacture" and which fall under the personal use exception: "preparation or compounding of a controlled substance by an individual for his own use." W. Va. Code, 60A-1-101(m). The term "manufacture" includes a number of activities, i.e., production, preparation, propogation, compounding, conversion, or processing a controlled substance. The personal use exception is confined to two of the enumerated activities "preparation" and "compounding" and neither of these activities include the growing of marijuana, which, as we have seen, is included with the term "production."

Consequently, under the familar rule that where a statute expressly designates certain subjects, those which are not so designated are excluded by implication from the scope of the statutory designation, *Johnson v. Continental Casualty Company,* 157 W. Va. 572, 201 S.E.2d 292 (1973); *State ex rel. City of Charleston v. Hutchinson,* 154 W. Va. 585, 176 S.E.2d 691 (1970), we conclude that the personal use exception contained in W. Va. Code, 60A-1-101(m), does not cover the production or growing of marijuana. Other courts which have considered this question agree with this interpretation. *E.g., Bedell v. State,* 260 Ark. 401, 541 S.W.2d 297 (1976), *cert. denied,* 430 U.S. 931, 51 L.Ed.2d 775, 97 S.Ct. 1552 (1977); *Patty v. State,* 260 Ark. 539, 542 S.W.2d 494 (1976); *State v. Netzer,* 579 S.W.2d 170 (Mo. 1979); *State v. Wiggins,* 33 N.C. App. 291, 235 S.E.2d 265 (1977). In *State v. Boothe,* 285 N.W.2d 760, 762 (Iowa App. 1979), *aff'd,* 284 N.W.2d 206 (Iowa), the court, in construing a statute similar to ours, stated:

"The acts of 'preparation' and 'compounding' represent only two of several acts which constitute manufacturing under that definition. Other acts which constitute manufacturing include produc-

tion, propogation, conversion, processing, packaging or repackaging, and labelling or relabelling of a controlled substance. If it had been the intention of the legislature that all acts within the statutory definition were to be excluded if done by an individual for his own use, it could easily have so provided by applying the proviso directly to the term 'manufacturing' rather than to some but not all acts of manufacturing.

"We find that the language which was employed suggests an intent to limit the application of the personal use proviso to acts of preparation or compounding of a controlled substance. This conclusion is strengthened by the fact that another proviso contained in the same definition pertaining to medical doctors and other persons or institutions licensed to distribute, dispense or conduct research relating to controlled substances is also applicable to some but not all acts of manufacturing."

Thus, we conclude the trial court correctly refused to direct a verdict in appellant's favor and properly refused appellant's instructions relating to the personal use exception.

Appellant's second legal argument evidenced by his tendered instruction is that in order to convict for the manufacturing of marijuana, W. Va. Code, 60A-4-401(a), requires that the State prove not only the act of manufacturing but also that it was for the purpose of distributing or selling. We do not read this meaning into the statute:

"(a) Except as authorized by this chapter, it is unlawful for any person to manufacture, deliver or possess with intent to manufacture or deliver a controlled substance."

Subsection (a) of the statute sets out three general categories of offenses to (1) manufacture, (2) deliver or (3) possess a controlled substance. As to this latter class, possession is further defined as "possess with intent to manufacture or deliver." It seems clear that the limiting phrase "with intent to manufacture or deliver" is confined

solely to the offense of possession and does not relate to the other two offenses of manufacturing and delivering. *See State v. May*, 20 N.C. App. 179, 201 S.E.2d 95 (1973); *cf. State v. Wiggins*, 33 N.C. App. 291, 235 S.E.2d 265 (1977); *State v. Elam*, 19 N.C. App. 451, 199 S.E.2d 45 (1973), *cert. denied*, 28 N.C. 256, 200 S.E.2d 656. We therefore, hold that under W. Va. Code, 60A-4-401(a), in order to prove the offense of manufacturing a controlled substance, it is not necessary to prove that the defendant possessed the controlled substance with intent to manufacture or deliver the same.

For the foregoing reasons, the judgment of the Circuit Court of Marion County is reversed and the case is remanded for a new trial.

*Reversed and Remanded.*