408 S.E.2d 31

**STATE of West Virginia, Appellee, Plaintiff Below,**

v.

**LOLA MAE C., Appellant, Defendant Below.**

**No. 19707.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 15, 1991.

Decided July 11, 1991.

Dissenting Opinion of Chief Justice Miller Aug. 15, 1991.

Mario Palumbo, Atty. Gen., Teresa Tarr, Asst. Atty. Gen., for appellee.

D. Clinton Gallaher, IV, Fayetteville, C. Cooper Fulton, Charleston, for appellant.

WORKMAN, Justice:

This case is before the Court upon the appeal of Lola Mae C. from a November 27, 1989, order of the Circuit Court of Fayette County which denied the defendant's motion to set aside her conviction guilty of two counts of first degree sexual assault. The defendant was subsequently sentenced to two concurrent terms of fifteen to twenty-five years each. The defendant argues that:

1. The convictions under count one and two of the indictment must be set aside because the defendant was indicted and convicted as both a principal in the first degree and a principal in the second degree for first degree sexual assault based on the same criminal conduct, thereby violating principals [sic] of double jeopardy[; and]

2. The convictions must be reversed because the state violated the purpose of having the father and stepmother separately indicted and tried by placing into evidence matters relating to the father's guilt, in particular 14 to 15 prior sexual assaults, during which, all parties agree, the stepmother was not present.[1]

Upon review of the petition and briefs as well as the oral arguments and all other matters of record, we affirm the decision of the lower court.

---

1. The petition for appeal originally contained an issue regarding instructional error. The appellant in the brief submitted in this matter requested that this assignment of error be dismissed in light of this Court's decisions in Syl. Pt. 10, *State v. Murray,* 180 W.Va. 41, 375 S.E.2d 405 (1988), Syl.Pt. 2, *State v. Neider,* 170 W.Va. 662, 295 S.E.2d 902 (1982) and *State v. Daggett,* 167 W.Va. 411, 430–34, 280 S.E.2d 545, 556–58 (1981). Further, it also appears from the appellant's brief that the validity of the indictment is also being brought into question before this Court. However, the appellant never assigned error with the indictment nor in any significant manner argued the validity of the indictment on appeal. Accordingly, we deem any alleged error in the indictment to be waived. *See* Syl.Pt. 6, *Addair v. Bryant,* 168 W.Va. 306, 284 S.E.2d 374 (1981).

The facts in this case revealed that around July 4, 1986, the victim C.C., Jr.[2], a nine-year-old boy, travelled from Canton, Ohio, where he resided with his natural mother to Winona, West Virginia, in Fayette County, to spend six weeks with his father and his stepmother, the defendant. C.C.'s father had been divorced from his natural mother for nine years.

It was during this six-week period that C.C. was sexually assaulted some fourteen or fifteen times by his father and on one occasion by both his father and stepmother, according to the boy's testimony at trial. Specifically, C.C. testified that his father would "stick his penis up my butt."

The assault involving the appellant occurred on or about August 11, 1986, at the father's trailer. The testimony at trial revealed that the assault took place in C.C.'s bedroom and that his father, the defendant, and his four-year-old stepbrother, who was asleep at the time, were present during the incident. At trial, C.C. testified that his father removed the child's underwear just prior to the defendant placing vaseline on her finger and inserting her finger into the boy's anus. The victim's testimony indicated that defendant's finger remained in his anus approximately ten seconds before she removed it. The testimony of the boy further described how the defendant then proceeded to watch as C.C.'s father inserted his penis into C.C.'s anus.

Approximately two days after this incident, the child returned to Canton, Ohio. It was not until September of 1986, while visiting relatives in West Virginia, that C.C.'s natural mother learned that her former husband had been sexually assaulting their son. The testimony at trial revealed that the natural mother at that time came into possession of a note that C.C. had written to his cousin describing the assaults which his father had perpetrated upon him.[3] The contents of the note, written by the victim prior to the incident with which the defendant was charged, was not introduced into evidence because it only detailed assaults inflicted upon C.C. by his father.

The natural mother testified that when she returned home to Canton, Ohio, she confronted her son about the note, and he told his mother that he had been sexually assaulted by his father. C.C.'s mother informed a social services agency of the abuse, which in turn referred her to the West Virginia Department of Human Services. The child's mother also contacted the Fayette County Sheriff's Department which, as part of the department's investigation, had C.C. examined by Dr. Alesandra Kazura, a pediatrician specializing in child abuse cases at New River Family Health Center in Scarbro, West Virginia.

Dr. Kazura testified that based upon her October 31, 1986, examination of C.C., she found no objective abnormalities of C.C.'s genitalia or his rectum. However, the doctor did render an opinion at trial that the nine-year-old child had been sexually assaulted.[4]

The defense's only contention as to a possible motive the child might have to fabricate such a story was that the child was angry at the defendant for disciplining him on one occasion; and that the child felt coerced to testify against the defendant as a result of certain threats his stepfather made against the father and defendant. However, it was unrefuted that the child made his first complaint concerning his fa-

---

2. Consistent with our practice in cases involving sensitive matters, we use the victim's initials rather than his name. Moreover, since in this case, the victim is related to the appellant through marriage, we have referred to the appellant by her last name initial rather than her full last name. *See State v. Edward Charles L.,* 183 W.Va. 641, 398 S.E.2d 123 n. 1 (1990) (citing *Benjamin R. v. Orkin Exterminating Co.,* 182 W.Va. 615, 390 S.E.2d 814 n. 1 (1990)).

3. The lower court only permitted references to the note by the child's cousin and mother for the purposes of showing that the child's original complaint about the offenses was in written form. The substance of the note's contents was not admitted.

4. It is important to note that the appellant did not raise the testimony of the expert as an assignment of error on appeal. Further, upon review of the expert's testimony we find that it

ther to a cousin at a time when he had not had communication with his mother and stepfather for about six weeks.

The defendant testified and denied the charges against her. The defendant also offered a character witness, Susan Hanger, who was her husband's employer and the defendant's friend. This witness testified that in her opinion, the defendant was not the kind of person who would do anything that would hurt a child. Finally, the defendant elicited the testimony of Christina Wright, a children's protective services worker, who investigated reports of child abuse and neglect received in September, 1986 regarding M.C., the victim's stepbrother. Wright testified that she found no evidence of physical abuse concerning M.C. and no other evidence which would warrant the removal of that child from the home. It is important to note that Wright was asked to investigate only the allegations concerning M.C., and as she testified, C.C. "was considered protected, safe" as he was not in that home at the time of her investigation.

At the close of presentation of all the evidence in this case, the jury, after deliberations, returned a verdict finding the defendant guilty of both counts of first degree sexual assault. It is from this verdict that the defendant now appeals.

## DOUBLE JEOPARDY

The first assignment of error raised on appeal concerns whether a defendant may be convicted of first degree sexual assault as a principal in the first degree as well as first degree sexual assault as a principal in the second degree [5] resulting from what is alleged by the defendant to be the same sexual conduct. The defendant asserts that double jeopardy principles were violated when the state used the same operative facts in order to obtain two convictions against the defendant for being both a principal in the first degree and a principal in the second degree. The defendant further argues that the state could have prosecuted her as either a principal in the first degree based upon sexual intrusion of the child by the insertion of her finger into the boy's anus; *or* as an aider and abetter, principal in the second degree, based upon the insertion of her finger in the boy's anus as a means of lubricating the boy for the father's anal intrusion. The state, on the other hand, maintains that double jeopardy principles were not violated by charging and ultimately convicting the defendant of two counts of first degree sexual assault since two separate offenses were committed.

■ West Virginia Code § 61–8B–3 (1984) [6] provides in relevant part that: "[a] person is guilty of sexual assault in the first degree when ... [s]uch person, being fourteen years old or more, engages in sexual intercourse or sexual intrusion with another person who is eleven years old or less." (emphasis added). Sexual intrusion is defined in West Virginia Code § 61–8B–1(8) (1986) as "any act between persons not married to each other involving penetration, however slight, of the female sex organ or of the anus of any person by an object for the purpose of degrading or humiliating the person so penetrated or for gratifying the sexual desire of either party." Sexual intercourse is defined as "any act between persons not married to each other involving penetration, however slight, of the female sex organ by the male sex organ or involving contact between the sex organs of one person and the mouth or anus of another person." *Id.* § 61–8B–1(7).

In *State v. Carter*, 168 W.Va. 90, 282 S.E.2d 277 (1981) this Court addressed the issue of whether a defendant's conviction for two counts of first degree sexual assault involved the same criminal transaction and therefore precluded punishment for both offenses under principles of dou-

comported with standards set by this Court in *State v. Charles Edward L.*, 183 W.Va. 641, 398 S.E.2d 123.

**5.** West Virginia Code § 61–11–6 (1931) provides, in pertinent part, that "[i]n the case of every felony, every principal in the second degree, and every accessory before the fact, shall be punishable as if [s]he were the principal in the first degree."

**6.** West Virginia Code § 61–8B–3 was amended in 1991. The amendments, however, do not affect the outcome of this case.

ble jeopardy. The appellant in *Carter* was convicted of one count of first degree sexual assault through forcible compulsion by performing oral sex on the victim and one count of first degree sexual assault through forcible compulsion by performing sodomy on the victim. 168 W.Va. at 92, 282 S.E.2d at 279.

We determined in *Carter* that two separate and distinct crimes had been committed by analyzing the legislative intent of the statute involved.[7] *Id.* 168 W.Va. at 92, 282 S.E.2d at 279–80. In particular, this Court reasoned that

> [s]exual intercourse is defined ... as any act between unmarried persons involving: 'penetration ... of the female sex organ by the male sex organ or ... contact between the sex organs of one person and the mouth or anus of another person.' The use of the word 'or,' which is a conjunction, expresses the legislative intent that sexual intercourse can be committed in each of the various alternative ways, with each type of prohibited contact constituting a separate offense. From this, it is apparent that the Legislature chose to broadly define the term 'sexual intercourse' so that it would cover a variety of sexual encounters.

*Id.* (footnote omitted). Therefore we ultimately held that not only does "W.Va. Code, 61–8B–1(7), defining sexual intercourse, when read in conjunction with W.Va.Code, 61–8B–3, defining sexual assault in the first degree, indicate[ ] that an act of forcible oral intercourse and an act of forcible anal intercourse are separate and distinct offenses," but also "[w]here a defendant commits separate acts of our statutorily defined term 'sexual inter-

course' in different ways, each act may be prosecuted and punished as a separate offense."[8] *Carter,* 168 W.Va. at 92, 282 S.E.2d at 278, Syl. Pts. 1 and 2; *see State v. Woodall,* 182 W.Va. 15, 385 S.E.2d 253 (1989) (Court held W.Va.Code § 61–8B–1 (1986) defines sexual assault so that each violation of victim constitutes separate criminal offense).

In analyzing the facts currently before the Court we find the *Carter* case to be analogous in that two separate and distinct acts were committed. The first distinct act performed by the appellant in the present matter was that of inserting her finger into her stepson's anus. The second separate and distinct act performed by the appellant was aiding and abetting her husband, the victim's father, in his sexual assault of the child.

Furthermore, even though the appellant argues that the mere witnessing of a crime does not render a person an aider and abettor to that crime, we conclude that the appellant did much more here than simply witness the offense. In particular, the appellant misguidedly relies upon syllabus point 4 of *State v. Davis,* 182 W.Va. 482, 388 S.E.2d 508 (1989) (quoting Syl. Pt. 9, *State v. Fortner,* 182 W.Va. 345, 387 S.E.2d 812 (1989)) (citations omitted) where we held:

> 'Merely witnessing a crime, without intervention, does not make a person a party to its commission unless his interference was a duty, and his non-interference was one of the conditions of the commission of the crime; or unless his non-interference was designed by him

7. Even though W.Va.Code § 61–8B–1(7) has since been amended, the amendments do not affect the application of the *Carter* case to the present case because the relevant language remains substantially unchanged.

8. But see *State v. Reed,* 166 W.Va. 558, 276 S.E.2d 313 (1981) in which this Court in a holding specifically limited to the facts of that case found that the appellant's conviction of sexual abuse in the first degree and of sexual misconduct was reversible error since "[d]ouble jeopardy prohibits multiple punishment for the same offense, therefore under our criminal sexual conduct statute, *W.Va.Code,* 61–8B–1 *et seq.*

[1976], a single sexual act cannot result in multiple criminal convictions." *Reed,* 166 W.Va. at 565, 276 S.E.2d at 315, Syl.Pt. 4. The facts of that case revealed that the appellant had engaged in but one continuing sexual offense transpiring over the course of approximately fifteen minutes and ending in one act of sexual intercourse. *Id.* at 320. In reaching the decision in *Reed,* this Court opined that "unlawful sexual intercourse could not possibly occur without a certain amount of unlawful sexual contact and it seems unreasonable to us that the Legislature contemplated the division of one act of rape into its component elements for the purposes of punishment." *Id.*

and operated as an encouragement to or protection of the perpetrator.'

■ The appellant's reliance upon the *Davis* case is misplaced. The *Davis* case presented a factual context far less persuasive than the one of the instant case, yet there too we found the defendant to be more than a mere witness. In *Davis*, the defendant lay next to the victim on the bed and patted her, telling the victim not to worry while observing his son sexually assault her. 182 W.Va. at 484, 388 S.E.2d at 510. This Court opined that while

> [s]yllabus [p]oint 9 of *Fortner* holds that merely witnessing a crime without interference is not culpable ... [h]ere ... the defendant was not merely an unconnected passive bystander. The assault occurred in his home, and his son was the perpetrator. Furthermore, the victim looked upon the defendant as a family member because of her long association with him and referred to him as 'Uncle Dewey'.

*Id.* 182 W.Va. at 485, 388 S.E.2d at 511.

Similarly, in the instant case, the victim was in the defendant's home and the defendant was the victim's stepmother. This defendant, like the defendant in *Davis*, was not an unconnected bystander. The victim in *Davis* was an adult, whereas the victim here was nine-years-old. As one standing in loco parentis to the child, the defendant here most certainly had a duty to intervene to protect the child. As one of two adult authority figures present, the defendant's actions not only in preparing the child for the father's intrusion, but also in remaining in the room, observing and giving tacit approval to the sexual assault facilitated and encouraged the father, demonstrated a shared intent in the enterprise, and were sufficient to make her culpable. These are all relevant factors in determining whether the defendant was guilty of the crime as an aider and abettor. *See id.* 182 W.Va. at 484, 388 S.E.2d at 511 and Syl. Pt. 5.

■ " 'Under the concerted action principle, a defendant who is present at the scene of a crime and, by acting with another, contributes to the criminal act, is criminally liable for such offense as if he were the sole perpetrator.' " *Id.* 182 W.Va. at 483, 388 S.E.2d at 509, Syl. Pt. 6 (quoting Syl. Pt. 11, *Fortner*, 182 W.Va. 345, 387 S.E.2d 812). Consequently, we find in the defendant's double jeopardy argument to be without merit.[9]

## PRIOR ACTS

The next issue before this Court is whether evidence of prior sexual acts allegedly committed by the father against the child were admissible against the defendant at her trial. The defendant contends that the trial court improperly permitted the state to introduce evidence of the father's collateral crimes in the defendant's trial when the defendant played no role whatsoever in the commission of such acts.[10] The state, however, contends that the trial court did not err in admitting evidence of the father's collateral acts.

West Virginia Rule of Evidence 401 provides that " '[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Another consideration which must not be overlooked is that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice ..." W.Va.R.Evid. 403. Thus, the question which must be answered is whether the admission of the prior acts tends to make the existence of a fact which is of consequence more probable than without the admission of those prior acts, and if so,

---

**9.** Since we conclude that factually two separate criminal acts have occurred, we find that the application of the test set forth in *State v. Zaccagnini,* 172 W.Va. 491, 308 S.E.2d 131, 141 (1983) (quoting *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932)) is inapplicable to this case since that test is utilized to determine whether the same act constitutes a violation of two separate and distinct statutes.

**10.** The trial court overruled the defendant's motion to suppress these prior acts after conducting an in camera hearing.

whether the probative value outweighs any unfair prejudicial effect of the evidence.

In order to address this issue it is important to ascertain which fact of consequence the prior acts tends to prove. We have previously stated in *State ex rel. Brown v. Thompson*, 149 W.Va. 649, 142 S.E.2d 711, *cert. denied*, 382 U.S. 940, 86 S.Ct. 392, 15 L.Ed.2d 350 (1965), *overruled in part on other grounds*, *State v. Petry*, 166 W.Va. 153, 273 S.E.2d 346 (1980) that " 'in order that one may be a principal in the second degree or aider and abettor, the general rule is that it is essential that there be a crime committed and a principal in the first degree, and it must be shown that the person for whom [the] accused was acting was connected with the offense.' " *Id.* 149 W.Va. at 656, 142 S.E.2d at 716 (quoting 22 C.J.S., *Criminal Law*, § 85); *see also Channell v. Coiner*, 297 F.Supp. 1005, 1008 n. 3 (N.D.W.Va.1969).

Consequently, as part of its case-in-chief, the state bore the obligation to prove that the defendant's husband did indeed commit the sexual assault on the victim on the occasion involving the defendant in order to prove that the defendant aided and abetted him.[11] Therefore, the introduction of evidence by the state which tended to show the father's guilt on that occasion obviously was admissible. Thus, it is necessary to examine the question of whether evidence of such collateral acts by the father would have been admissible to prove *his* guilt on the occasion involving the defendant.[12]

Clearly, evidence of the prior sexual assaults on this victim in close temporal proximity to the one in question would have been admissible against the father not only under W.Va.R.Evid. 404(b),[13] but also under this Court's ruling in *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). In *Edward Charles L.*, we specifically held that:

> Collateral acts or crimes may be introduced in cases involving child sexual assault or sexual abuse victims to show the perpetrator had a lustful disposition towards the victim, a lustful disposition towards children generally, or a lustful disposition to specific other children provided such evidence relates to incidents reasonably close in time to the incident(s) giving rise to the indictment.

183 W.Va. at 643, 398 S.E.2d at 125, Syl. Pt. 2, in part. In reaching this decision we relied in part upon the reasoning utilized by

---

**11.** The defendant erroneously relies upon our ruling in *State v. Underwood*, 168 W.Va. 52, 281 S.E.2d 491 (1981). In *Underwood*, the appellant and his wife were jointly charged with the manufacture of marijuana. Among the evidence introduced against the appellant at trial was a bag containing approximately two grams of marijuana which was found inside the appellant's wife's purse which was in a closet located in the appellant's home. 168 W.Va. at 54, 281 S.E.2d at 492. In finding that the introduction of this evidence was in error, we reasoned that the evidence of marijuana in the purse "can only be remotely viewed as tied to the cultivation of the marijuana plant. More important is the lack of proof of the husband's connection to the marijuana in his wife's purse, for example, that he knew of its presence, or exercised some dominion over it." *Id.* at 493.

The *Underwood* case is so factually dissimilar from the present case that it is unhelpful to the Court. In the present case, we are concerned with a defendant who aided and abetted her spouse in sexually assaulting a child. Since proof of the spouse's crime is of uppermost importance and since, unlike in *Underwood*, the evidence of the prior acts relates directly to the crimes with which the defendant is charged; we decline to accept defendant's argument involving the *Underwood* case.

**12.** It was unnecessary to resolve this question at the husband's trial, as the defendant and her husband were indicted separately, and he subsequently entered a plea of nolo contendere to two counts of incest.

**13.** West Virginia Rule of Evidence 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

It is important to note that W.Va.R.Evid. 404(b) is not applicable in the present case since the purpose of the rule is to prevent other convictions and bad acts of the *accused* in evidence merely to show the *accused* acted in conformity therewith. *See State v. Hanna*, 180 W.Va. 598, 606–607, 378 S.E.2d 640, 648–49 (1989).

the Fourth Circuit Court of Appeals in *United States v. Masters*, 622 F.2d 83 (4th Cir.1980) which indicated that

> '[o]ne of the accepted bases for the admissibility of evidence of other crimes arises when such evidence, "furnishes part of the context of the crime" or is necessary to a "full presentation" of the case, or is so intimately connected with and explanatory of the crime charged against the defendant and is so much a part of the setting of the case and its "environment" that its proof is appropriate in order "to complete the story of the crime on trial by proving its immediate context or the 'res gestae'["] or the "uncharged offense is [']so linked together in point of time and circumstances with the crime charged that one cannot be fully shown without proving the other ...['] [and is thus] part of the res gestae of the crime charged." And where evidence is admissible to provide this "full presentation" of the offense, "[t]here is no reason to fragmentize the event under inquiry" by suppressing parts of the "res gestae".'

*Edward Charles L.*, 183 W.Va. at 648, 398 S.E.2d at 130 (quoting *Masters*, 622 F.2d at 86). It logically follows then that where collateral act evidence would have been admissible against the principal in the first degree, it is also admissible against an aider and abettor to show the underlying offense was committed, a necessary prerequisite of proving aiding and abetting.

It is also important to point out that the evidence of prior sexual acts clearly is not being offered merely to show the criminal disposition of the defendant, since the prior acts involved were not the defendant's and in no way inculpated her.[14] Moreover, it is significant that the use of this evidence in the context of the whole trial was very limited. The state referred to these prior sexual acts once in the opening statement and once in the case-in-chief. Further, no great detail concerning these prior acts as introduced would inflame the jury's senti-

ments. Consequently, we find no error was committed by the lower court in the admission of the prior sexual acts of the defendant's husband on the victim.

Based upon the foregoing opinion, we affirm the decision of the Circuit Court of Fayette County.

Affirmed.

MILLER, Chief Justice, dissenting:

My disagreement with the majority lies in two areas: first, the defendant's separate conviction for first degree sexual intrusion, and second, the use of the husband's prior bad acts against the defendant wife when she was not a party to them.

I agree that the defendant was guilty of being an accessory to the first degree sexual assault committed by the boy's father. The majority correctly states that "the defendant's action not only in preparing the child for the father's intrusion, but also in remaining in the room, observing and giving tacit approval to the sexual assault facilitated and encouraged the father, demonstrated a shared intent in the enterprise, and were sufficient to make her culpable." (Majority Op., p. 457.)

### I.

However, I do not agree that her conviction of first degree sexual assault for the very act that led to her conviction as an accessory, i.e., preparing the victim for the father's sexual assault by placing vaseline in his anus, was proper. This preparatory act involved only several seconds and was immediately followed by the father's sexual assault. Obviously, her act as an accessory was a predicated step and linked her to the father's crime. This dual participation should not under the facts of this case give rise to her separate conviction for her preparatory act.

In the past, we have recognized that a sexual event may be deemed only one offense where preparatory acts lead to the

---

**14.** In *Charles Edward L.*, we recognized that "W.Va.R.Evid. 404(b) is an 'inclusive rule' in which all relevant evidence involving other crimes or acts is admitted at trial unless the sole purpose for the admission is to show criminal disposition." 183 W.Va. at 647, 398 S.E.2d at 129 (citing *Masters*, 622 F.2d at 86).

**460**

consummation of a sexual assault. In *State v. Reed,* 166 W.Va. 558, 276 S.E.2d 313 (1981), the defendant had made an unlawful contact with the victim's vagina and then had forcible sexual intercourse with her. We recognized in *Reed* that our sexual offense statute, W.Va.Code, 61–8B–1 (1986), et seq., contains a variety of different sexual offenses and that "[s]ome sections of the article, however, are obviously lesser offenses included within greater crimes created by other sections of the article." 166 W.Va. at 567, 276 S.E.2d at 319.

We found in *Reed* that the evidence "indicated but one continuing sexual offense transpiring over the course of approximately fifteen minutes and culminating in sexual intercourse[.]" 166 W.Va. at 568, 276 S.E.2d at 320. We came to the conclusion that the unlawful sexual conduct conviction was improper under double jeopardy principles:

"It would appear to the court that unlawful sexual intercourse could not possibly occur without a certain amount of unlawful sexual contact and it seems unreasonable to us that the Legislature contemplated the division of one act of rape into its component elements for the purposes of punishment." 166 W.Va. at 569, 276 S.E.2d at 320.

More recently in *State v. Davis,* 180 W.Va. 357, 376 S.E.2d 563 (1988), the victim had been sexually assaulted when she visited the defendant's family home to obtain laundry that she had left there earlier in the evening. The defendant forced his attentions on the victim and ultimately dragged her to a bedroom. Prior to engaging in forcible vaginal intercourse, he made her touch his penis. This latter act resulted in an indictment for first degree sexual abuse under W.Va.Code, 61–8B–7 (1984). The forcible sexual intercourse resulted in a second degree sexual assault indictment. The defendant was found guilty on both charges.

In *Davis* we relied on the *Reed* case and summarized its holding "that where the evidence shows only one continuing sexual offense culminating in a single act of sexual intercourse, conviction and punishment of the accused for unlawful sexual behavior entirely ancillary to such sexual intercourse violates double jeopardy." 180 W.Va. at 361, 376 S.E.2d at 567. We also outlined in *Davis* several factors that should be considered in determining whether an act of unlawful sexual behavior constituted one offense or multiple offenses. These "includ[e] the nature of the acts, the interval of time between them and the place or places at which they are committed[.]" 180 W.Va. 361, 376 S.E.2d at 567. We concluded that the unlawful touching giving rise to the first degree sexual abuse violated double jeopardy in view of its close proximity to the sexual intercourse.

I believe that *Reed* and *Davis* dictate that the defendant's convictions for the unlawful sexual intrusion by inserting her finger covered with vaseline was an event ancillary to, yet instrumental in her conviction as an accessory to the husband's act which followed within a few seconds. As a consequence, I believe the majority is wrong in refusing to apply double jeopardy principles to find that only one offense had occurred.

## II.

The majority's discussion of the prior bad acts under Rule 404(b) of the West Virginia Rules of Evidence attempts to gloss over the critical point. The defendant does not argue that the State could not show the father's act of anal intercourse to which the defendant was an accessory. What the defendant does object to is the trial court's permitting the State to elicit testimony from the victim that his father had had anal intercourse with him on fourteen or fifteen different occasions when the defendant was not present.

The majority begins its attempt to rationalize this error by setting up a false premise that proof of these prior bad acts on the part of the father was necessary to show that the father did commit the act of anal intercourse which occurred when the defendant was present. Yet, the defendant did not dispute the State's evidence that the father had committed this act.

The majority fails to understand that prior bad acts covered by Rule 404(b) of the West Virginia Rules of Evidence, which is similar to the Federal Rules of Evidence, are not to be utilized to prove the defendant's guilt, i.e., that he acted in conformity with the prior acts.[1]

Thus, the question that the majority decides to frame and answer is wrong for two reasons. First, there was no evidentiary dispute on the father's committing the act of anal intercourse. Second, even if there were, his prior acts could not be used to prove that fact.

We explained the reason behind Rule 404(b) in *State v. Harris*, 166 W.Va. 72, 76, 272 S.E.2d 471, 474 (1980):

"The purpose of the rule excluding evidence in a criminal prosecution of collateral offenses is to prevent a conviction for one crime by the use of evidence tending to show that the accused engaged in other legally unconnected criminal acts[.]"[2]

Furthermore, as we have indicated in *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974), such collateral crime evidence is highly prejudicial and can result in a jury convicting the defendant on past misdeeds rather than the facts of the present case. *See also State v. Johnson*, 179 W.Va. 619, 371 S.E.2d 340 (1988).[3] This point was made by the United States Supreme Court in *Huddleston v. United States*, 485 U.S. 681, 691, 108 S.Ct. 1496, 1502, 99 L.Ed.2d 771, 783 (1988), in its discussion of Federal Rule 404(b). However, unlike the majority, *Huddleston* recognized the safeguards that surround the use of 404(b) evidence:

"We share petitioner's concern that unduly prejudicial evidence might be introduced under Rule 404(b).... We think, however, that the protection against such unfair prejudice emanates not from a requirement of a preliminary finding by the trial court, but rather from four other sources: first, from the requirement of Rule 404(b) that the evidence be offered for a proper purpose; second, from the relevancy requirement of Rule 402—as enforced through Rule 104(b); third, from the assessment the trial court must make under Rule 403 to determine whether the probative value of the similar acts evidence is substantially outweighed by its potential for unfair prejudice ...; and fourth, from Federal Rule of Evidence 105, which provides that the trial court shall, upon request, instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted." (Citations omitted.)

The majority observes in Note 13 that Rule 404(b) is not involved because it deals with prior bad acts of the accused and here the prior bad acts were not committed by the accused, but involved only her husband. This is the ultimate legal sophistry, as the only logical use of this collateral evidence was to prejudice the jury against the defendant for her husband's prior acts against the victim. Even the majority acknowledged this prejudice, but brushes it aside by concluding that the collateral bad act evidence was limited.

The final paradox is that the defendant has been sentenced to two fifteen to twen-

1. Rule 404(b) provides:

   "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

2. Prior to the adoption of Rule 404 of the W.Va. Rules of Evidence in 1985, we had essentially the same common-law evidentiary rule as indicated by Syllabus Point 11 of *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974).

3. One of the most forceful summaries of the reasons behind Rule 404 is found in 2 J. Weinstein and M. Berger, *Weinstein's Evidence*, ¶ 404[04] at p. 404–28–29 (1985):

   "Central to the Anglo–American system of criminal law is the concept that the accused must be protected against forcible inculpation—either through his words or proof of his past misdeeds.... A second ... which is accepted by all American jurisdictions—is the exclusionary rule embodied in Rule 404; it renders inadmissible, as part of the prosecution's evidence in chief, character evidence offered solely to show the accused's propensity to commit the crime with which he is charged." (Footnotes omitted.)

462

ty-five year sentences on two first degree sexual assault convictions arising from one act. The father, who had a thirty-four count indictment returned against him for his sexual assaults on the same victim, was able to plea bargain to two counts and receive consecutive sentences of five to ten years. The majority's refusal to follow our double jeopardy principles in sexual assault cases compounds this injustice.